HARRIET E. READ *et al. vs.* EAST PROVIDENCE FIRE DISTRICT.

PROVIDENCE—JUNE 16, 1898.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

One is not liable for the acts or negligence of another unless the relation of master and servant exists between them.

It is, therefore, a general rule that an independent contractor, and not the owner, is liable for all damages to third persons resulting from his negligence while the work is in progress and under his exclusive control.

But an owner who, without formally accepting the work, steps in and assumes the practical control of the structure by appropriating it to the use for which it is constructed, and by so doing treats the structure as his own, becomes liable to the third parties for injury therefrom to the same extent as if there had been a formal acceptance of it.

An agreement that the work shall be satisfactory to or accepted by the architect, engineer, or owner has to do with the contractual relations of the parties and their own rights and liabilities.

TRESPASS ON THE CASE for negligence in the construction and care of a tank or stand-pipe erected for a water supply. Defendant pleaded that the structure was in the exclusive control of an independent contractor. At the trial plaintiffs became nonsuit, and the matter was heard on their petition for a new trial.

TILLINGHAST, J. This is an action of trespass on the case for negligence, and is brought to recover damages alleged to have been suffered by the plaintiffs by reason of the collapse of a certain large tank or stand-pipe which had been erected on the defendant's land, adjacent to the plaintiffs' land.

The declaration alleges, amongst other things, that the defendant corporation was engaged in the business of providing water for general purposes to certain of the inhabitants of East Providence, and for that purpose erected and maintained a certain large iron tank or stand-pipe, and kept the same filled with water, and that the said stand-pipe was so negligently constructed in certain specified particulars, and also was so negligently managed in certain other specified particulars, that it collapsed, whereby the plaintiffs' land and buildings were flooded and greatly damaged. The declaration further sets out that prior to the time of the collapse of said stand-pipe, to wit, in September, 1893, it was damaged by the wind, and that its weakness and unsoundness were shown by its bending inward and by its leaking, which facts were well known to the defendant.

The defendant pleaded specially that the stand-pipe, at the time of its fall, was in process of construction by an inde-

pendent contractor; that it had not been completed and had not been accepted by the defendant and was not in its control, *but was in the exclusive management, care, and control of an independent contractor*, to wit, the Cunningham Iron Works Company. Defendant also pleaded the general issue.

At the close of the plaintiffs' testimony the justice presiding at the trial granted the defendant's motion for a nonsuit, and the case is now before us on a petition for new trial for alleged error of the court in so doing.

The ground on which the nonsuit was granted, as we gather from the record, was that, the stand-pipe having been constructed by an independent contractor and not having been accepted by the defendant at the time of the accident, the action could not be maintained. The testimony introduced by the plaintiffs, however, shows that while the stand-pipe had not been formally accepted by the defendant at the time of the accident, yet it was practically completed and was being used more or less by the defendant in supplying water to its customers. The testimony also shows that a gale of wind, which occurred in September, 1895, had caused a large dent in the stand-pipe, causing it to leak badly, which fact was well known to the defendant, and that at the time of the accident the contractor was endeavoring to remedy this defect so as to make the work acceptable to Mr. Gray, the engineer in charge of the work. Joseph J. Luther, the superintendent of the fire district, was asked if there was a connection between the stand-pipe and the pumping-station, and also if there were pipes running to different portions of the town. His answer was, "Yes, sir; of course, to give even pressure. At first we pumped through the main, but when the stand-pipe was finished we pumped the water into it. Before that we had an accident, and the pipe received a black eye and a big dent and got shook up considerably, and after that we filled it up and pushed the dents out of the pipe. That was in September, 1893." . . . . "Q.—Did the pipe leak after that? A.—It did. The water came out in a narrow stream." . . . . "Q.—The roof, as I understand you, was placed there after this dent? A.—Yes, sir.

After that we filled it up, while they were repairing that dent, we would use it spasmodically." . . . . "When they were putting the roof on it seemed to have been filled pretty near to the top.   Q.—Now on the 19th day of January, and for a short time prior to that date, was that stand-pipe completed, that is, had all the work been done ?   A.— We had the top put on and all; yes, sir." . . . . "After it was finished—completed—they delivered the water from that pipe.   Q.—Just prior to the time of the collapse of the stand-pipe . . . for how long was the East Providence Fire District using water from the stand-pipe ?   A.—They were not using it until Mr. Cunningham gave the order to cut the ice away, and they wanted to keep the water in motion to prevent it from freezing.   We thought as long as we kept it in motion it would not freeze, *and after that water was delivered through the system from the stand-pipe until it broke.*   Q.—As a matter of fact, was not the water kept in that pipe to give the contractor opportunity to make these repairs and complete his job ?   A.—I think not.   Q.— Mr. Luther, was that stand-pipe ever accepted by the East Providence Fire District or by the executive committee ? Was it ever approved by the engineer under that contract ? A.—With the exception of that repair.   Mr. Gray wanted that dent fixed.   He said if that was fixed in a way that it didn't show from the ground, he didn't propose to climb up to the top to see that everything was all right." . . . . " The Court.—You mean to say it was filled for the purpose of serving the town ?   The Witness.—Yes; of course.   When making the repairs it was let up and down; but after that I understand we delivered the water from it after he cut the ice out.   It was delivered from the stand-pipe to the town. The Court.—It was filled for the purpose of delivery ?   The Witness.—Yes, sir ; on recommendation of Mr. Gray and with his consent.   He was the engineer."

In view of the facts which are thus made to appear, we are of opinion that the nonsuit was improperly granted.   For, while it appears that the stand-pipe had not been formally accepted, yet the defendant corporation was so far exercising

dominion over it as to fill it and use it for the purpose of delivering water to its customers; and in view of this fact it is quite immaterial, so far as the plaintiffs' rights are concerned, whether as between the defendant and the contractor there had been a formal acceptance of the work or not.

That, as a general rule, an independent contractor, and not the owner, is liable for all damages to third parties resulting from his negligence while the work is in progress and under his exclusive control and has not been accepted by the owner, as contended by the defendant, is well settled by all the authorities, many of which are cited in his brief. See *Sanford* v. *Pawtucket Street Railway Co.*, 19 R. I. 537; *Conners* v. *Hennesey*, 112 Mass. 96; *Butler* v. *Hunter*, 7 H. & N. 825; *Ellis* v. *Sheffield Gas Co.*, 2 E. & B. 766; *Knight* v. *Fox*, 5 Exch. 721; *Mulchey* v. *Methodist Rel. Soc.*, 125 Mass. 487; *Vincennes Water Supply* v. *White*, 124 Ind. 376; *Casement* v. *Brown*, 148 U. S. 615; *Kelley* v. *Mayor, &c.*, 11 N. Y. 432; *Smith* v. *Simmons*, 103 Pa. St. 32; *Barry* v. *St. Louis*, 17 Mo. 121; *Alabama Midland R. R. Co.* v. *Martin*, (Ala.) 14 So. Rep. 401. This rule is based upon the general proposition, which is certainly well founded in reason, that one person is not liable for the acts or negligence of another, unless the relation of master and servant exists between them. But it is not applicable to the case at bar for the reason, as we have already seen, that here the evidence shows that the owner, without formally accepting the work, stepped in and assumed practical control of the structure by appropriating it to the use for which it was erected. And by so doing, as to third persons at any rate, it treated the structure as its own and became responsible for injury therefrom to the same extent as if there had been a formal acceptance thereof. Whether, in the circumstances shown in the evidence, the defendant and the contractor might be held jointly and severally liable for the injury in question, on the ground that it was caused by their combined negligence, as was recently held in the case of *Chicago Economic Fuel Gas Co.* v. *Myers*, 168 Ill. 139, we are not called upon to decide.

The cases cited by defendant's counsel to the effect that under an entire contract, like the one put in evidence in the case at bar, where the work is destroyed before the completion and acceptance thereof, the independent contractor having control of the property must suffer all loss due to its destruction, doubtless state the law correctly, and would be applicable here had the stand-pipe remained in the exclusive possession and control of the contractor up to the time of the accident. The numerous other cases, also, which are cited to the effect that where the agreement is that the work shall be satisfactory to or accepted by the architect, engineer, or party, such satisfaction or acceptance according to the contract must be proved, have to do merely with the contractual relations of the parties and their relative rights and liabilities thereunder as between themselves, and, hence, are not pertinent to the case before us.

Petition for a new trial granted.

*Lycurgus Sayles and James A. Williams,* for plaintiffs.
*C. Frank Parkhurst,* for defendant.