ELIZA J. OLIVER v. PETTACONSETT CONSTRUCTION CO.

JUNE 9, 1914.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(1) *Appeal and Error. Exceptions.*

The court will not consider exceptions involving a consideration of the weight of the evidence, where the trial court committed prejudicial error in the admission of evidence, requiring a new trial.

(2) *Evidence. Opinion Evidence.*

While a question to an expert witness which does not give a clear statement of the various facts upon which the opinion of the witness is to be based, is objectionable, the error is not substantial where the further examination of the witness shows in detail upon what facts the opinion is based.

(3) *Evidence. Life Tables.*

Where the declaration alleged permanent injury and there was evidence from which the jury could have found such allegation established, life tables were properly admitted in evidence.

(4) *New Trial. Remarks of Counsel.*

Improper remarks of counsel to a witness will not warrant a new trial where they are followed immediately by instruction of the court to the jury to disregard them.

(5) *Evidence. Negligence.*

In an action of negligence by a traveler upon a highway against a sewer contractor, inquiry by plaintiff of the defendant as to whether there was a contract between him and the city was properly admitted.

(6) *Negligence. Evidence.*

In an action by plaintiff against a sewer contractor for damages resulting to her from a negligent obstruction of a path which she claimed defendant owed her a duty to keep safe and unobstructed, and which was outside of the lines of the highway where the sewer was being constructed, and upon private property, it was prejudicial error to permit certain portions of the contract betweeen the city and defendant to be read to the jury, as tending to show any duty owed by defendant to plaintiff, where the contract related only to the obligations of defendant in relation to the highway.

(7) *Contracts. Rights of Third Parties. Negligence.*

A third party cannot maintain an action for injuries resulting from a breach of a contract between two other contracting parties, even where the duty imposed by the contract relates to matters which have a direct bearing upon the injury sustained.

NEGLIGENCE.   Heard on exceptions of defendant and sustained.

PARKHURST, J.   This is an action of the case for negligence and after verdict for the plaintiff in the Superior Court, and after denial of defendant's motion for a new trial, has been duly prosecuted to this court upon the defendant's bill of exceptions.

The declaration is in two counts.   The first count alleges that on the 17th day of December, 1909, the defendant was engaged in the business of constructing a sewer in Ophelia Street, a public highway in the city of Providence; that on said day said Ophelia Street was excavated to a great depth, and was further obstructed by the tools, timber, utensils, machinery and appliances used by the defendant in furtherance of the work, so that pedestrians were compelled, in order to go to and from their residences and houses, on business and for divers purposes, to diverge from the line of said Ophelia Street, outside of the same, as by law they had a right to do, and that on said day certain footpaths, immediately adjacent to said street and between divers piles of lumber and timbers, and other machinery, appliances and debris, had been left open by the defendant for the accommodation of said pedestrians, and were then and there, as for a long time before that day they had been used, adopted and accepted by said pedestrians for their accommodation, as aforesaid, as the defendant corporation then and there well knew.   And it was then and there the duty of said defendant corporation to keep said pathways reasonably clear of obstructions dangerous to passengers in the night time, and to abstain from creating any dangerous obstruction in said pathways adjacent to said street liable to trip and throw pedestrians where there was no light to disclose conditions of said pathways; that the defendant corporation, by its agents and servants, in disregard of its duty aforesaid, negligently and carelessly placed planks, obstructions, debris and timbers in said

pathway and then and there allowed the same to remain therein, and knew of said planks, obstructions, debris and timbers being in said pathway, and being dangerous to pedestrians, and liable to trip them in the night season, or but for want of reasonable care would have known thereof; that while in the exercise of due care on her part while she was passing through said pathway adjacent to said Ophelia Street, in the night time of said 17th day of December, she stumbled and fell over certain planks, obstructions, debris and timbers then and there in said pathway piled to a considerable height, to wit, two feet across the traveled path of said pathway, and was severely injured, straining and laming her back and knee, and receiving a permanent shock to her nervous system, alleging certain permanent injuries.

The second count is substantially the same as the first, except as to the duty charged, and the breach of duty. This is charged as follows: "It was then and there the duty of said defendant corporation to use reasonable care to keep said footpaths reasonably lighted so that pedestrians lawfully using said street as aforesaid might be able by the exercise of reasonable care on their part to see numerous obstructions thereon and projecting therein," and the plaintiff alleges that the defendant corporation for a long time before said 17th day of December, 1909, and up to the time of the accident, had assumed and attempted to discharge said duty by placing lanterns and lights *along said footpaths* to light up the same and make the same reasonably safe; the plaintiff then alleges she fell over timbers, planks and debris and obstructions piled up in said footpath to the height of two feet, and that the defendant in disregard of its duty aforesaid negligently and carelessly failed to light said footpath at said place, so that the plaintiff, or other pedestrians, could see the said planks, timbers, debris and other obstructions, alleging certain permanent injuries.

The defendant pleaded the general issue after a demurrer to the first count had been overruled.

Briefly stated, the testimony shows that for some months prior to December 17, 1909, the defendant had been engaged under contract with the city of Providence in building a sewer in Ophelia Street, in said Providence, and that said street was excavated to a great depth and was impassable for a long distance; that the defendant had upon the land adjacent to said street and to the easterly thereof large quantities of timbers, boards, plank, bricks, pipes and other materials and tools necessary for the work; that pedestrians living on the said street were unable to pass to and from their houses along said street, and were in the habit of traveling over land lying to the easterly of said street, where the same was more or less obstructed by the contractor's materials, following ways which were used by defendant's employees in and about the handling of materials and doing their work. It further appears that on the evening of December 17th, 1909, at about seven o'clock, the plaintiff was returning to her house near Ophelia Street, from Hartford Avenue, going northerly, in company with her husband and a friend, and that they were walking upon land of private owners outside of the line of said street and to the east thereof; that they were endeavoring to make their way over the said land occupied by said contractor's materials, and along and between large piles of brick and other materials in the same way (as they claim) that they had previously used and had used that same afternoon about four o'clock P. M., in leaving their homes and going to Hartford Avenue; that when they reached a point some distance north of Carmody's store they came to a large pile of brick and were obliged to turn easterly and northerly about the same, and that beyond said pile of brick the way was quite dark, the light from the electric street lamp being shut off by the brick; that Mr. Oliver, the plaintiff's husband, and plaintiff's friend, Mrs. Milner, preceded the plaintiff to find the way and passed on in safety, but that the plaintiff, who was in the rear and a little to the right of them, stumbled over some plank and fell and was injured, as set forth in the declaration.

Inasmuch as we find that the trial judge committed certain errors, in the admission of evidence and in his charge to the jury, which entitle the defendant to a new trial, we shall not at this time consider the exceptions based upon the denial of the defendant's motion for a new trial and upon the denial (1) of the defendant's motion for the direction of a verdict in its favor (Exception 13th), since those exceptions involve a consideration of the weight of the evidence, and the weight of the evidence cannot now be considered in view of the fact that certain improper evidence was allowed to go to the jury.

The defendant's first exception relates to the overruling of a demurrer to the declaration. It appears that this demurrer which was overruled was filed to the first count of the declaration and that thereafter, by agreement, the declaration was amended by filing a second count to which no demurrer appears to have been interposed. We find no exception to this ruling in the papers; nor do we find any error; and this exception is overruled.

The defendant's second and third exceptions are waived. (2)    The defendant's fourth exception was to the admission of certain questions asked of Dr. William H. Palmer, an expert for the plaintiff (tr. pp. 240-242), viz.: "39 Q. Taking those into consideration, and her testimony on the witness stand, doctor, what is your opinion as to her condition and what the trouble is with her, giving your reasons and full explanations as much as a medical man can?" "40. Q. Assuming that the jury find her condition to be as stated by her so far as depends upon the subjective symptoms?" These questions, taken together as one, are objectionable for the reason that they do not give a clear statement before the jury of the various facts upon which the opinion of the witness was to be based; such questions have frequently been held inadmissible. 17 Cyc. 255 b.; *Barber's Appeal,* 63 Conn. 393, 408; *In re Will of Snelling,* 136 N. Y. 515, 518; *Mfrs. Acc. Indemnity Co.* v. *Dorgan,* 7 C. C. A. 581, 585. But as the further examination of the same witness does show in detail by numerous and extended questions, asked and answered without

objection, upon what facts and symptoms, both objective and subjective, his opinion was based, we find that the error was technical rather than substantial and that no harm was done. This exception is therefore overruled.

(3)  The defendant's fifth exception to the admission in evidence of the life tables is overruled. The declaration alleged permanent injury and there was evidence from which the jury could have found that the plaintiff was permanently injured. Under these circumstances the life tables were properly admitted in evidence. *MacGregor* v. *Rhode Island Co.* 27 R. I. 85; *O'Clair* v. *Rhode Island Co.,* 27 R. I. 448.

(4)  The defendant's sixth and eighth exceptions were to certain remarks of plaintiff's counsel addressed to witnesses under examination, and tended to impute improper motives to the witnesses, in regard to their testimony. The remarks were improper, but were followed up immediately by such instruction of the court to the jury to disregard the same, that no harm was done. These exceptions are overruled.

Defendant's seventh exception is waived.

Defendant's ninth exception was to the allowance by the court of a question addressed to F. E. Shaw (tr. p. 530), viz.: "104. Q. Will you kindly tell us by what right you stop up a public highway and say you reserved it for yourself?" The question was impertinent and immaterial, and should have been excluded. It was doubtless the manner as well as the matter of the question that was objectionable. But as the question was apparently understood and answered by the witness, it does not appear that any harm was done, and the exception is overruled.

The tenth exception was to a ruling permitting Frederick E. Shaw to answer a question (tr. p. 595), viz.: " 311. Q. . . . Then there was a contract between you and the (5) city for three-fourths of a mile?" This question was unobjectionable, and the exception is overruled. It is a matter of common knowledge that such work is usually done by contract, and no harm could come from this fact being known to the jury.

The eleventh exception is without merit and is overruled.

The twelfth exception is to the ruling permitting certain portions of the contract between the defendant and the city of Providence to be read in evidence. This was improper and it was prejudicial error. It has been repeatedly held that contracts between the defendants and third parties are inadmissible as tending to show any duty owed by the defendant to the plaintiff, under such circumstances as are here shown. The portions of the contract read to the jury (tr. p. 742) were as follows: The contractor is to attend to the "fencing, lighting, watching" . . . "Whenever it becomes necessary to interfere with any highway, railway, or private way, the private way, the contractor shall at his own expense, provide suitable and safe bridges, or other sufficient crossings for the accommodation of the travel on said way, and he shall maintain the same in good and safe condition until the same ways be restored, when he shall remove all bridges and other temporary expedients and restore said ways to a condition suitable for use, all to be satisfactory to the engineer." . . . "The contractor shall give reasonable notice to the owners of the railways and private ways before interfering with them." . . . "Material shall be kept trimmed up so as to be of as little inconvenience as possible to public travel, or the adjoining tenants."

In the first place it may be remarked that these provisions of the contract are totally inapplicable to the state of facts set forth in the declaration and in the evidence. The plaintiff is suing for the damages resulting to her from a negligent obstruction of a path which she claimed that the defendant owed her a duty to keep safe and unobstructed, and which was entirely outside of the lines of Ophelia Street and was in fact upon private property. The contract with the city had and could have nothing to do with the defendant's rights to occupy private property or with any duty which it might have assumed in relation thereto or as to any path or way over the same, or to any person or persons having

occasion to use such path or way.  The contract does not purport to have any such bearing, and only relates to the rights, duties and obligations of the defendant in relation to Ophelia Street and the work therein to be done, as between the defendant and the city of Providence.

But even if the contract had any relation to the matter of the suit, or the cause of the injury, the general rule has been frequently laid down, and so far as we know, without (7) dissent, that such a contract between the defendant and a third party, even where the duty imposed by the contract relates to matters which have a direct bearing upon the injury sustained, will be of no avail to the plaintiff.  Thus in *Roddy* v. *The Mo. Pac. Ry. Co.*, 104 Mo. 234, where it appeared that the defendant had a contract with the owner of a quarry to furnish cars for the transportation of stone from the quarry, negligently furnished a car with a defective brake, whereby the plaintiff in handling the cars was injured by reason of the defect, and it was attempted to recover from the defendant on the theory that the defendant owed a duty to the plaintiff, by reason of the contract, to furnish safe cars, the court said, p. 244:  "The question then is, did defendant owe plaintiff the duty of using ordinary care to furnish cars in which to load stone, which were properly constructed and provided with suitable brakes?  It is insisted that the duty arose either out of the contract between defendant and Pickle, or by virtue of the relationship between plaintiff and defendant, arising out of their respective duties under the contract.

"Assuming that the contract between defendant and Pickle, either expressly, or by implication, imposed upon the former the duty to supply the latter with cars provided with suitable brakes, and that there was a breach of that duty whereby plaintiff was injured, does the contract afford him indemnity for his injuries?  The right of a third party to maintain an action for injuries resulting from a breach of a contract between two contracting parties, has been denied by the overwhelming weight of authority of the state and federal courts

of this country and the courts of England. To hold that such actions could be maintained, would not only lead to endless complications, in following out cause and effect, but would restrict and embarrass the right to make contracts by burdening them with obligations and liabilities to others, which parties would not voluntarily assume." (Citing numerous cases) . . . "The rule is put upon two grounds, either of which is unquestionably sound. One ground is given by the court in the opinion in *Winterbottom* v. *Wright*, as follows: 'If we were to hold that plaintiff could sue in such a case, there is no point at which such actions would stop. The only safe rule is to confine the right to recover to those who enter into the contract; if we go one step beyond that there is no reason why we should not go fifty.' The other ground is thus stated in the New Jersey case above cited; 'the object of parties in inserting in their contracts specific undertakings with respect to the work to be done is to create an obligation *inter sese*. These engagements and undertakings must necessarily be subject to modifications and waiver by the contracting parties. If third persons can acquire a right in a contract, in the nature of a duty to have it performed as contracted for, the parties will be deprived of control over their own contracts.'

"Plaintiff not being a party to the contract cannot maintain this action on account of injuries, resulting from any breach of duty defendant owed Pickle, arising purely out of the terms of the contract between them."

See also as supporting the same general doctrine: *Winterbottom* v. *Wright*, 10 Mees. & W. 109; *Savings Bank* v. *Ward*, 100 U. S. 195; *Marvin Safe Co.* v. *Ward*, 46 N. J. L., 19; *Thieme* v. *Gillen*, 41 Hun. 443; *Mansfield* v. *Mayor, &c., of N. Y.*, 165 N. Y. 208, 215; and the same principle is recognized in this state in *McCaffrey* v. *Mossberg and Granville Mfg. Co.*, 23 R. I. 381.

And it is to be noted that in many, if not all, of these cases, the pleadings set forth the provisions of the contracts under which plaintiffs claimed a breach of duty; but it was

nevertheless held that evidence of the provisions of such contracts was improper and inadmissible, and, if admitted, constituted reversible error.   For all these reasons this court is of the opinion that the provisions of the contracts were entirely irrelevant and inadmissible, and tended to confuse the jury.   The twelfth exception is therefore sustained.

The fourteenth and fifteenth exceptions are waived.

The sixteenth exception was to the refusal to grant the defendant's seventh request to charge the jury, which was as follows:   "If the jury answer the first or third questions in the special findings in the negative, and the second question in the affirmative, they must find a verdict for the defendant."

The special findings requested were:

"1.   At the time of the accident was there a footpath immediately adjacent to Ophelia Street at and along the place where the accident occurred left open for the accommodation of pedestrians, which was then in use by pedestrians to the knowledge of the defendant?

"2.   Was there a footpath to the knowledge of the plaintiff across private property to Hilarity Street at the time of the accident safer to travel by night than the one adopted by the plaintiff?

"3.   Did the defendant prior to the time of the accident assume the duty of keeping lighted the easterly side of Ophelia Street, or the land immediately adjacent thereto rendered dangerous, by the progress of the work then being done at points where it was reasonable for it to assume that pedestrians would pass, so as to render such points reasonably safe for such pedestrians?"

Inasmuch as the jury answered both the first and the third questions in the affirmative and the second question in the negative, this instruction so requested became immaterial, and this exception is therefore overruled.

The seventeenth exception was to the refusal to grant the defendant's eighth request to charge the jury which was as follows:   "It was negligence for the plaintiff, under the

conditions existing at the time and place of the accident, not to have followed directly behind her husband in the path he followed."

We think this request involved a matter of evidence which the jury might properly consider in relation to the question of the plaintiff's due care, but that it was not properly the subject of a positive instruction. This request was rightly refused and this exception is overruled.

The eighteenth exception was to the special charge given to the jury at the plaintiff's (6th) request, which was as follows: "If the defendant corporation had from the time of the commencement of the work in September up to the time of the accident placed lights along the east side of Ophelia Street to the knowledge of the plaintiff (at places where necessary for the safety of pedestrians), so that people could at night pass along the east side with reasonable safety, then the plaintiff has a right to rely upon the defendant corporation (continuing with such practice and) placing lights where it was necessary along said east side for safety of foot passengers." We think this charge was unwarranted by the evidence which was properly before the jury. There was no evidence that the defendant had ever placed lights along the east side of Ophelia Street to the knowledge of the plaintiff; the plaintiff admitted that she never saw any lights along the path which she and others used and that she never, at any time when she went up and down this place, saw any lights out in this lot. The instruction is ambiguous and does not clearly show whether the lights referred to were supposed to be along the east side of Ophelia Street, within the limits of the street and at the edge of the excavation so as to give warning to pedestrians of the presence of the excavation and of the danger of falling into it, as to which there was some evidence, or whether they were supposed to be outside of the street limits in the lot where the path was claimed to exist upon which the plaintiff was attempting to pass at the time of the accident. In any event, we think that this instruction was unwarranted by the evidence; and that both

in itself and taken in connection with the admission of portions of the contract, which we have held to be inadmissible, it tended to confuse and mislead the jury to the prejudice of the defendant.    This exception is therefore sustained.

Defendant's exceptions twelfth and eighteenth are sustained; the other exceptions are overruled and the case is remitted to the Superior Court for a new trial.

*A. B. Crafts, William H. McSoley*, for plaintiff.
*Bassett & Raymond*, for defendant.
*R. W. Richmond*, of counsel.