ARTHUR BUCCI *vs.* LEO BUTLER *et al. d.b.a.* LEO BUTLER COMPANY.

DOLORES BUCCI, *p.a. vs.* SAME.

ARTHUR BUCCI *vs.* SAME.

ANTONIA BUCCI, *p.a. vs.* SAME.

JUNE 20, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. These actions on the case for negligence were brought respectively by a father and his two minor daughters to recover damages alleged to have resulted from personal injuries to the daughters in consequence of a motor truck backing into them. The cases were tried together in the superior court before a justice thereof sitting without a jury and at the conclusion of the evidence he rendered a decision for the defendant in each case.

The four cases are in this court on plaintiffs' exceptions to these decisions and to certain rulings on the admission of evidence. Since recovery in the father's cases depends on defendants' liability for the daughters' injuries, and since the cases of the daughters present the same question as to defendants' liability, we shall, unless otherwise stated, treat all the cases as if only the case of Dolores is before us. Furthermore, since the defendants conducted their business under a firm name, they will hereinafter be referred to as an entity.

The plaintiff's declaration is in three counts. The breach of duty alleged in each count is that the defendant, its agents and servants, "carelessly and negligently operated, controlled and directed" a certain truck, with the specification, in the first count, of failing to observe the plaintiff; in the second count, of failing to warn her; and, in the third count, of general negligence.

The evidence for the plaintiff tended to show the following facts. On November 23, 1939, the defendant was engaged in laying sewer pipes in King street, North Providence, in this state, under a contract with that town, which contract required the defendant to remove all soil remaining after the pipes had been laid. The Buccis lived on King street, about opposite the place where the defendant was operating a steam shovel on that day. There was a picket fence and an uncurbed dirt sidewalk, about five feet wide, in front of these premises.

Surplus soil was loaded onto trucks by the steam shovel and, if no trucks were immediately available, the soil was deposited on the side of King street across from the Bucci home. The only part of the highway open to traffic adjoined the sidewalk in front of Bucci's house. When trucks were available to receive the surplus soil, they were so operated on this portion of the highway as to be in a position for loading by the steam shovel. Upon request, the defendant gave the surplus soil to, and loaded it onto trucks of, recipients which would remove it from the site. The Hennessy Dairy owned and operated one of these trucks.

About two o'clock in the afternoon of November 23 the Bucci children, Dolores and Antonia, four and two years of age respectively, were leaning against the picket fence in front of the Bucci property watching the steam shovel. While they were in this position, a truck of the Hennessy Dairy, hereinafter generally called the truck, came for surplus soil to the site where the defendant was operating the steam shovel. A man, who was standing at the side of the steam shovel, then, by motions, directed the movement of the truck so that it would be in a position to receive the surplus soil from the steam shovel. In the course of such maneuvering, the truck was backed across the sidewalk, striking and injuring both children.

As to what the man who was standing at the side of the steam shovel did in directing the truck, Anna E. DiOrio, a witness for the plaintiff, who was in the front yard of her

house which was almost across from the Bucci home, testified as follows: "Q. You saw him make the motions? A. Yes, telling him to come ahead. Q. Like this? (indicating). A. Yes. . . . Q. The fellow that was driving the truck was looking at him? A. Yes. Q. Was that the time the truck was backing in? A. Backing into the child." The witness further testified that, although she did not know the name of the man who was directing the truck, she had "seen him on the job there before this".

Plaintiff's father testified that one "Prinier or something like that", whom he knew well because of having worked with him, was defendant's foreman on the King street job; and that, about 11:30 a. m. of the day of the accident, he had seen him standing "alongside the steam shovel . . . The side nearest to my house", while the same truck that later injured his children was being loaded by the steam shovel.

The only witness for the defendant was Lewis T. Simmons, its "job manager" at that time. The substance of his testimony in direct examination was that the truck did not belong to the defendant, nor was the driver in its employ. In cross-examination he testified that the steam shovel was operated by an employee of the defendant; that the *foreman* on the King street job was "a man by the name of Perna", who had died before the trial; and that he, the witness, did not recall whether he or the foreman gave the Hennessy Dairy permission to come on the job for surplus soil.

█ In his decision from the bench the trial justice held that there was no evidence to establish the relation of master and servant between the defendant and the driver of the truck. In this he was correct. He further stated that an attempt had "been made to show that somebody motioned this truck back, but there is no evidence that I can recall that tied up that somebody that did the motioning with this defendant. There is no testimony that the operator of this crane, this digger or steam shovel, gave any instructions or any motions to anybody." In this we find him in error.

█ The Hennessy Dairy was not a trespasser; it was at

least a licensee of the defendant with reference to the removal of the surplus soil. We are not concerned in this case with the question of whether liability would have attached to the defendant in the absence of any act on its part in furtherance of the invitation or permission given to the Hennessy truck. In the instant case both the defendant and the truck were active participants in the execution of a purpose for their common benefit. Under its contract with the town, the defendant was bound to remove the surplus soil at its expense. The Hennessy Dairy apparently needed such soil for its own purposes. The defendant, for convenience and the pecuniary benefit accruing to it from the free cartage of the surplus soil, not only invited the Hennessy Dairy to come upon land then in the temporary control of the defendant, but also actively cooperated in loading the truck of the Hennessy Dairy in order that their common object might be accomplished to their individual benefit.

Furthermore, there was evidence from Anna E. DiOrio and the plaintiff's father which was fairly open to the reasonable inference that, in view of all the circumstances, the driver of the truck was being directed into position by a servant of the defendant, probably its foreman Pernier or Perna, so that the truck could be filled by the steam shovel. The evidence was also open to the further reasonable inference that the plaintiff and her sister, Antonia, were in plain sight of the driver of the truck, the operator of the steam shovel, and the person directing the truck while it was being driven into the required position for loading. In so doing, the truck was driven against the Bucci children.

■ In the circumstances of this case the question of defendant's liability is controlled by well-established and generally recognized principles of the law of negligence. The defendant was under the duty not to create a situation which was potentially dangerous to persons lawfully on that part of King street open to the public, especially children. It was bound to use reasonable care for the protection of all such persons. If, in disregard of this duty, it united with the

Hennessy Dairy and, for their common benefit, negligently set in operation a force which proximately resulted in injury to the plaintiff, then the defendant's negligence could reasonably be found to be at least a concurrent cause of the injury. On such a finding of fact the defendant would be liable. This phase of the case was apparently overlooked by the trial justice in his decision, and in the circumstances we think that justice requires that there be a new trial. The plaintiff's exception to the decision for the defendant is sustained.

█    To avoid confusion in a new trial we advert to a number of plaintiff's exceptions to rulings which sustained defendant's objections to the introduction in evidence of the whole or of certain parts of the contract between the defendant and the town of North Providence. These exceptions are without merit for the reasons stated in *Oliver* v. *Pettaconsett Construction Co.*, 36 R. I. 477. But if at a new trial the defendant should deny that it was bound to remove the extra soil at its expense, then only such part of the contract that pertains thereto would be admissible in evidence in the circumstances of this case.

The exception of the plaintiff to a decision for the defendant in each case is sustained, all other exceptions are overruled, and each case it remitted to the superior court for a new trial.

*Mortimer G. Cummings, John A. Notte, Jr.,* for plaintiffs.

*Henry M. Boss, Francis W. Conlan,* for defendant.

