John V. PASTORELLI, Plaintiff,

v.

ASSOCIATED ENGINEERS, INC., Procaccini & Moroney Plumbing & Heating Corp., and Randall Sheet Metal Co., Defendants.

Civ. A. No. 2082.

United States District Court
D. Rhode Island.

July 10, 1959.

---

Stephen A. Fanning, Jr., Edward F. Hindle, Providence, R. I., Knight Edwards, Providence, R. I., Edwards & Angell, Providence, R. I., of counsel, for plaintiff.

Matthew E. Ward, Providence, R. I., for Associated Engineers, Inc.

Melvin A. Chernick, and Lee A. Worrell, Providence, R. I., for Randall Sheet Metal Co.

Louis V. Jackvony, Jr., Providence, R. I., for Procaccini & Moroney Plumbing & Heating Corp.

DAY, District Judge.

In this action the plaintiff seeks to recover damages for injuries alleged to have been caused by the negligence of the three defendant corporations. Jurisdiction is based upon diversity of citizenship and the existence of a controversy in the requisite amount. The case was tried to the Court.

The accident resulting in the injuries for which plaintiff seeks damages occurred on November 10, 1955 upon the premises of the Narragansett Racing Association, Inc. (hereinafter called "the Racing Association") in Pawtucket, Rhode Island. On said date plaintiff, an employee of the Racing Association, was lawfully upon said premises in a building familiarly known as the "clubhouse", and was engaged in the performance of his duties. While walking through said clubhouse, a heating duct suspended from the ceiling fell and struck him, causing the injuries for which he now seeks damages.

The evidence establishes that early in 1954 the defendant Associated Engineers, Inc. (hereinafter called "Associ-

ated") contracted in writing with the Racing Association to prepare plans and specifications for the installation of certain heating, ventilating and air conditioning systems on its premises (including said clubhouse). It also agreed to "supervise the contractors' work throughout the job".

The defendant Procaccini & Moroney Plumbing & Heating Corp. (hereinafter called "P. & M.") thereafter contracted with said Racing Association to erect and install said equipment; and Randall Sheet Metal Co. (hereinafter called "Randall"), as subcontractor, agreed with P. & M. to install certain heating ducts under the aforesaid contracts. Performance of the work required under said contracts was substantially completed and accepted by the owner on November 30, 1954; installation of the heating ducts in the clubhouse was completed by Randall and approved by Associated sometime in August, 1954. It is undisputed that the duct which fell upon the plaintiff was installed by Randall.

The duct which fell was approximately 20 feet long and weighed approximately 500 pounds. It was suspended from the ceiling of said clubhouse by the attachment of semi-rigid strips of metal, called hangers, to the sides of the duct, which hangers were then attached to the ceiling. This ceiling was of seven-eighths inch sheathing and was nailed to the joists of the building, leaving a considerable air space between such sheathing and the roof of the clubhouse. The duct was not in any way affixed directly to the roof itself or to the joists of the clubhouse.

Considerable expert testimony was offered as to the quality of the duct work performed by Randall. The specifications for the heating, ventilating and air conditioning system prepared by Associated, and with which Randall agreed to comply, provided that "all sheet metal work shall be erected in a first class and workmanlike manner" and that "the ducts shall be securely supported from the building construction in an approved manner".

The credible evidence satisfies me that the securing of a duct of the weight involved here to said ceiling by the means employed was not good practice nor in accordance with generally accepted practice, and that it was not installed in a first class or workmanlike manner.

By the terms of its contract with the Racing Association, P. & M. was obligated to keep a "competent superintendent" on the job throughout the performance of the work called for by its contract so as to give "efficient supervision" thereto. It is clear that it did supervise the day to day performance of the work under its contract. Furthermore, it selected Randall to perform the sheet metal work required under its contract, made no objection to the manner in which said work was being performed, and approved it as having been completed in accordance with the contract.

Pursuant to its agreement to "supervise the contractors' work throughout the job", Associated prepared and submitted periodic "inspection reports" to the Racing Association while the work was in progress. On November 30, 1954, Associated approved the invoice of P. & M. for the balance then payable under its contract less the sum of $400 for minor items to be completed thereafter, and certified that the "performance and execution of the contractor's work has been satisfactory". Its employee, the engineer who prepared these reports, testified that his employer assigned to him the task of supervising the installation of said systems, and that in pursuance of his duties he visited the job site on one, two or three occasions each week to inspect the work of the contractor as it was being done. He also testified, however, that he never observed any of the ducts being hung from the ceiling in said clubhouse, stating that whenever he visited the clubhouse the ducts were either on the floor or already installed. He also admitted that he never climbed a ladder to determine whether the hang-

ers by which they were suspended were attached by nails or lag screws and never tested any of the hangers to see how securely they were attached.

By way of defense the defendants contend (1) that the plaintiff cannot recover from them even if they were negligent because he was not in privity of contract with them or with any of them; (2) that none of the defendants was guilty of any negligence which can reasonably be said to have been a proximate cause of the plaintiff's injuries; and (3) that the work performed by each of them had been completed and accepted by said Racing Association more than a year prior to the accident in which plaintiff was injured, thereby relieving them of potential liability for the work done.

■ The question of legal responsibility of the defendants for any harm sustained by the plaintiff must be determined in accordance with the law of Rhode Island. Person v. Cauldwell-Wingate Co., 2 Cir., 1949, 176 F.2d 237, certiorari denied 338 U.S. 886, 70 S.Ct. 189, 94 L.Ed. 544.

■ Defendants correctly argue that ordinarily an action for damages for the negligent performance of a contract will not lie in favor of a person who is not a party to such contract. This is the general rule in Rhode Island and elsewhere. See, e. g., Oliver v. Pettaconsett Construction Co., 1914, 36 R.I. 477, 90 A. 764.

But the plaintiff here is not seeking damages for the breach of any of the contractual obligations of the defendants. His right of action is based upon the breach of their duty to him and other persons who might be lawfully in said clubhouse to use due care in the installation of the duct work, and their negligence in creating a condition dangerous and hazardous to him and other persons lawfully in said clubhouse. This distinction is elementary; if it were otherwise, a person injured by the negligence of an independent contractor would be without redress against said independent contractor unless he happened to be a party to the agreement between the con-

tractor and contractee, no matter how grossly negligent the contractor may have been.

■ In Rhode Island it is well settled that an independent contractor whose negligence creates a hazardous condition may be liable in tort to persons other than the contractee. See Floyd v. Turgeon, 1942, 68 R.I. 218, 27 A.2d 330; Kimatian v. New England Telephone & Telegraph Co., 1928, 49 R.I. 146, 141 A. 331. And in Oliver v. Pettaconsett Construction Co., supra, the Supreme Court, in remanding the case for a new trial, recognized that the defendant might be liable to the plaintiff for injuries caused by its negligence in the performance of the work undertaken by it under its contract, to which contract the plaintiff was not a party. See also Bucci v. Butler, 1947, 73 R.I. 60, 53 A.2d 705.

■ The complaint in the instant action sounds in negligence. The plaintiff contends that the defendants and each of them were guilty of negligence in the carrying out of certain acts which they undertook to perform. The only relevance of the contracts hereinbefore described was to show that Randall was engaged to install said ducts; that P. & M. had control and superintendence over Randall's work; and that Associated had general supervision over the installation of the heating, ventilating and air conditioning systems of which the work of Randall formed a part. For this limited purpose the several contracts were clearly material and relevant. Proof of their contents, moreover, cannot serve to relieve the parties to those contracts of their common-law duty to exercise reasonable care for the safety of others in the performance of their work under said contracts. See Fidelity Title & Trust Co. v. Dubois Electric Co., 1920, 253 U.S. 212, 40 S.Ct. 514, 64 L.Ed. 865; Bacak v. Hogya, 1950, 4 N.J. 417, 73 A.2d 167; Bollin v. Elevator Const. & Repair Co., 1949, 361 Pa. 7, 63 A.2d 19, 6 A.L.R.2d 277; Murphy v. Barlow Realty Co., 1939, 206 Minn. 527, 289 N.W. 563; cf. Bucci v. Butler, supra. See also 38 Am.Jur., Negligence, §§ 20–22. As was said by

164

Judge Cardozo in the landmark case of MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, at page 1053, L.R.A.1916F, 696:

" * * * the presence of a known danger, attendant upon a known use, makes vigilance a duty. We have put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law."

An examination of the authorities convinces me that the doctrine of the MacPherson case is followed in Rhode Island. See Collette v. Page, 1921, 44 R.I. 26, 114 A. 136, 18 A.L.R. 74; cf. S. C. Johnson & Son, Inc. v. Palmieri, 1 Cir., 1958, 260 F.2d 88. This being so, the absence of privity of contract cannot be deemed per se a bar to the application of the ordinary principles of negligence in a tort action even though the acts undertaken by the defendants were in the performance of a contract with someone other than the plaintiff.

The fact that Rhode Island has approved and followed the rule of the MacPherson case is, however, not determinative of the defendants' first contention.

Although the law of Rhode Island does impose liability on the negligent manufacturer or bailor of a chattel for injury caused by latent defects therein to a person who might reasonably have been expected to be in the vicinity of its use, I have been unable to find any decision by the courts of Rhode Island applying or refusing to apply the rule of the MacPherson case to real structures as well. The cases of Read v. East Providence Fire District, 1898, 20 R.I. 574, 40 A. 760 and Downes v. Silva, 1937, 57 R.I. 343, 190 A. 42, cited by the defendants, are clearly distinguishable from the instant case and are of no assistances in deciding the question here presented. Under the circumstances, it becomes my duty to make an informed prophecy as to what the Supreme Court of Rhode Island would probably hold if the precise question were presently before it for decision. See Mutual Ben. Health & Accident Ass'n v. Cohen, 8 Cir., 1952, 194 F.2d 232, certiorari denied 343 U.S. 965, 72 S.Ct. 1059, 96 L.Ed. 1362; Fitch v. Firestone, D.C.R.I.1959, 173 F.Supp. 131.

There is an admitted split of authority as to the wisdom of extending the rule of MacPherson v. Buick Motor Co., supra, to cases involving real structures. Compare Wilson v. North Central Gas Co., 1957, 163 Neb. 664, 80 N.W.2d 685 with Hanna v. Fletcher, 1956, 97 U.S.App.D.C. 310, 231 F.2d 469, 58 A.L.R.2d 847, certiorari denied sub nom. Gichner Iron Works, Inc. v. Hanna, 351 U.S. 989, 76 S.Ct. 1051, 100 L.Ed. 1501. In my opinion the modern and enlightened view is to apply the principles of the MacPherson case to cases involving real structures. The attempt to differentiate between chattels and real structures in this regard is in my judgment without sound support either in reason or logic. I agree with the holding in Foley v. Pittsburgh-Des Moines Co., 1949, 363 Pa. 1, 68 A.2d 517, at page 533, where the Supreme Court of Pennsylvania said:

" * * * there is no reason to believe that the law governing liability * * * should be, or is, in any way different where real structures are involved instead of chattels * * *. The principle inherent in the MacPherson v. Buick Motor Co. case and those that have followed it * * * cannot be made to depend upon the merely technical distinction between a chattel and a structure built upon the land * * *."

Many other courts in recent years have similarly held that the principles governing liability which are inherent in the MacPherson case should also be applied in cases involving real structures. See, e. g., Hanna v. Fletcher, supra; Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 1948, 166 F.2d 908; McCloud v. Leavitt Corporation, D.C.Ill.1948, 79 F.Supp. 286; Inman v. Binghamton

Housing Authority, 1957, 3 N.Y.2d 137, 164 N.Y.S.2d 699, 143 N.E.2d 895, 59 A.L.R.2d 1072; Russell v. Whitcomb, Inc., 1956, 100 N.H. 171, 121 A.2d 781; Del Gaudio v. Ingerson, 1955, 142 Conn. 564, 115 A.2d 665; Hunter v. Quality Homes, Inc., 1949, 6 Terry 100, 45 Del. 100, 68 A.2d 620; Hale v. Depaoli, 1948, 33 Cal.2d 228, 201 P.2d 1, 13 A.L.R.2d 183; Murphy v. Barlow Realty Co., supra. This view, moreover, is also shared by the leading treatises on the subject. See, e. g., 2 Restatement, Torts, § 385; 2 Harper and James, Law of Torts (1956), § 28.10; Prosser on Torts (2d ed. 1955), § 85.

The cogent reasoning of these authorities is convincing. I am satisfied that when this issue is presented to the Supreme Court of Rhode Island, that Court will follow the more enlightened and modern doctrine, consistent with its approval of the MacPherson case, and will apply the principles of that case to the builders of real structures.

The next inquiry becomes—has the plaintiff sustained the burden of proof of negligence and of the proximate causation of his injuries against the defendants or against any of them?

As to the defendant Randall, I find that no sheet-metal worker in the exercise of reasonable care would have installed a duct of the weight here involved by attaching it to sheathing of seven-eighths inch in thickness, but on the contrary, would have secured it directly to the roof or to the joists of the clubhouse. The credible evidence also satisfies me that ordinary care required the use of lag screws—rather than nails—to secure the hangers of the duct. I find and conclude that Randall failed to use reasonable care in the installation of said duct and that its failure to do so was a proximate cause of the plaintiff's injuries and damages. The contention that the fall of the duct was due to an excessive accumulation of moisture caused by faulty construction of the clubhouse itself is not borne out by the credible evidence. Nor can it be said that the lapse of fourteen months between the date the duct was hung and the date when it fell conclusively established a lack of causal connection between Randall's negligence and its falling. In my considered judgment the negligence of Randall was a proximate cause of the accident at the time it occurred.

I am also satisfied that P. & M. did not exercise ordinary care in superintending the installation of said duct or in inspecting the manner and means of its installation. Had such care been exercised, the defective and inadequate means of attachment would and should have been discovered and corrected. P. & M.'s authority to have ordered such corrections is undisputed.

That such negligence is actionable is well illustrated by the recent case of Dow v. Holly Manufacturing Co., 1958, 49 Cal.2d 720, 321 P.2d 736. There one Bledsoe, a general contractor, engaged one Dover as a sub-contractor to install the gas heating equipment in a house under construction. Some three years after completion and acceptance of the house by the owner, the house having been sold twice in the interim, three occupants thereof were asphyxiated by gas. In the trial of a subsequent action for wrongful death the jury found that the leakage of gas resulted from the defective installation of the heating unit by Dover, and returned a verdict against Bledsoe, the contractor. In sustaining this verdict, the Court said at page 739 of 321 P.2d:

"The contractor * * * has supervision over the entire building and its construction, including the work performed by a subcontractor, and where he negligently creates a condition, either by himself or through a subcontractor, he is primarily responsible for that condition and the consequences that may follow from it. He is in full control of the construction and knows or should know what is being placed in the building. Indeed, what is placed there is peculiarly within his knowledge, and where, as here, it involves

a defective appliance which is covered and hidden by the walls in the course of construction, the responsibility for such defect should rest upon him as well as on the subcontractor."

And in further elaboration the Court said at page 741 of 321 P.2d:

"* * * it is immaterial whether Dover was an employee of Bledsoe or an independent contractor. It was defendant's responsibility to construct a house equipped with an adequate heating system and he could not negate that responsibility by delegating to Dover, even as a subcontractor, the work of installing the necessary equipment for said heating system. It is obvious that if he had discovered the defect in the heater installed by Dover, he would have required Dover to correct the defect or replace the heater. The fact that he did not discover the defect does not relieve him of liability, as it was a question for the jury as to whether he was negligent in permitting the house to be occupied with the defective heater which caused the deaths for which recovery was allowed."

In this connection, see also Person v. Cauldwell-Wingate Co., supra; Bittker v. Groves, 1939, 291 Mich. 40, 288 N.W. 327; Hooey v. Airport Const. Co., 1930, 253 N.Y. 486, 171 N.E. 752; cf. Person v. Cauldwell-Wingate Co., 1951, 2 Cir., 187 F.2d 832, certiorari denied 341 U.S. 936, 71 S.Ct. 855, 95 L.Ed. 1364; Mix v. City of Minneapolis, 1945, 219 Minn. 389, 18 N.W.2d 130; Blount v. Tow Fong, 1927, 48 R.I. 453, 138 A. 52. And see 2 Restatement, Torts, § 414.

I conclude and find that P. & M. should reasonably have foreseen that persons lawfully in said clubhouse would be exposed to grave risk of injury if said duct was not properly and securely installed; that P. & M. was negligent in the superintendence and inspection of the work done by Randall; and that its negligence was also a proximate cause of said accident of November 10, 1955 and of the injuries and damages sustained by the plaintiff.

■ While it is true that Associated undertook to exercise only a general supervision over the installation of the several systems, including the duct work, it did at all times possess and retain the ultimate control to approve or reject all work done by the contractor and by the subcontractors. The nature and extent of the duties of an architect or engineer who is required to exercise such general supervision has been the subject of judicial consideration in several reported cases. Although each of these cases turns on its particular facts, certain general principles seem to have been clearly established. A good statement of these principles appears in Cowles v. City of Minneapolis, 1915, 128 Minn. 452, 151 N.W. 184, at page 185, where the Court held:

"Plaintiff was an engineer and was employed as such. In performing the work which he undertook, it was his duty to exercise such care, skill and diligence as men engaged in that profession ordinarily exercise under like circumstances. He was not an insurer that the contractors would perform their work properly in all respects; but it was his duty to exercise reasonable care to see that they did so."

For similar statements of this rule, see McDonnell v. Wasenmiller, 8 Cir., 1934, 74 F.2d 320; United States for Use and Benefit of Los Angeles Testing Laboratory v. Rogers & Rogers, D.C.Cal.1958, 161 F.Supp. 132; Catalano v. Bopst, 1934, 166 Md. 91, 170 A. 562; School District No. 172 of King County v. Josenhans, 1915, 88 Wash. 624, 153 P. 326; Schreiner v. Miller, 1885, 67 Iowa 91, 24 N.W. 738; cf. Chiaverini v. Vail, 1938, 61 R.I. 117, 200 A. 462.

■ Pursuant to its contract, Associated assigned an engineer to supervise the work of P. & M. and of Randall; this engineer made periodic inspection re-

ports to the Racing Association as the work progressed. He admitted that he knew that the safety of persons in the clubhouse required that the ducts be secured to the joists of that structure. He also admitted that, despite this knowledge, he made no attempt to ascertain whether they were being so installed. Moreover, he made no visits to the clubhouse at a time when he could ascertain how the ducts were being installed. In other words, he failed to see that they were properly installed and took no steps after their installation to ascertain how and by what means they were secured. In my opinion he failed to use due care in carrying out his undertaking of general supervision. It follows that his employer, Associated, failed to use due care to see that the duct work was properly and safely installed; and that the exercise of due care by it would have led to the discovery of the dangerous and hazardous condition created by Randall's work. I find that harm to persons thereafter in said clubhouse was reasonably foreseeable if Associated failed to use due care in its supervision of the work performed by Randall; that Associated was therefore negligent in failing to use due care in the performance of said supervision; and that its negligence in this regard was likewise a proximate cause of the accident and of the injuries and damages sustained by the plaintiff.

In short, I find that each of the defendants was negligent and that the negligence of each was a concurring proximate cause of the plaintiff's injuries. I also find that the plaintiff was at all times in the exercise of due care for his own safety and was not guilty of any negligence which contributed in any way to the accident.

I must now consider the final contention urged by the defendants. This contention, briefly stated, is that notwithstanding the negligence of the defendants in the installation of the duct work, the acceptance of said work by the Racing Association serves to insulate them

from liability for injuries caused by their negligence which occur thereafter on the premises. There is some authority in support of the defendants' contention, generally bottomed on the theory that exclusive control of the premises passes from contractor to contractee upon acceptance of the project. See, e. g., Cunningham v. T. A. Gillespie Co., 1922, 241 Mass. 280, 135 N.E. 105; but see Flaherty v. New York, N. H. & H. R. Co., 1958, 337 Mass. 456, 149 N.E.2d 670. The trend of the law is, however, clearly away from the position urged by the defendants here. The emerging rule is that laid down by the Supreme Court of New Hampshire in Russell v. Whitcomb, Inc., supra, 121 A.2d at page 782:

"We adopt the view * * * that independent building and construction contractors should be held to a general standard of reasonable care for the protection of third parties who may be foreseeably endangered by the contractor's negligence even after acceptance of the work."

To the same effect, see also Hanna v. Fletcher, supra; Moran v. Pittsburgh-Des Moines Steel Co., supra; Inman v. Binghamton Housing Authority, supra; Murphy v. Barlow Realty Co., supra; 2 Restatement, Torts, § 385; Prosser on Torts (2d ed. 1955), § 85; Green, The Individual's Protection Under Negligence Law: Risk Sharing, 1953, 47 Northwestern U.L.Rev. 751. Moreover, the strongest case for the rejection of the rule of nonliability is presented where, as here, the negligently created defect is latent and concealed, and renders the work done imminently dangerous to third persons whose subsequent use of the premises should reasonably have been foreseen. See, e. g., Del Gaudio v. Ingerson, supra; Kuhr Brothers, Inc. v. Spahos, 1954, 89 Ga.App. 885, 81 S.E.2d 491; Foley v. Pittsburgh-Des Moines Co., supra; cf. Russell v. Whitcomb, Inc., supra.

I am fully convinced that the Supreme Court of Rhode Island would not hold that acceptance by a contractee

relieved his contractors from liability in tort for hidden and hazardous conditions created by their negligence. Accordingly, I must reject the final contention relied on by the defendants in the case at bar, and pass on to the question of damages.

At the time of the accident, the plaintiff, although seventy years of age, was in excellent health and worked regularly. He had been employed by the Racing Association for more than twenty years in a position of responsibility. His salary was $120 per week.

His pelvis was fractured in five places by the falling duct, as a result of which he was hospitalized for a period of forty-five days. He was confined to bed for forty days immediately after the accident and made to remain in a rigid position therein for at least thirty days. During this period it is clear that he suffered severe pain and discomfort. Thereafter he was compelled to remain almost continuously in his home until April 1, 1956, when he was able to resume his occupation on a part-time basis. It was not until May 1, 1956 that he began to perform all his customary duties.

At the time of trial, the plaintiff claimed that he was still suffering intermittent pain in his left leg, left arm and buttocks. He also complained of numbness in his left hand and some loss of strength therein. Apart from these complaints, it is clear that he has completely recovered from his injuries.

His special damages amount to $3,900.40, viz.: $2,472 for loss of wages and $1,428.40 for hospital and medical bills. In my opinion the sum of $11,000 will adequately and fairly compensate him for his injuries, pain, suffering and special damages. Judgment shall therefore be entered in his favor in the sum of $11,000 against the three defendants.