MARTIN FLAHERTY *vs.* THE NEW YORK, NEW HAVEN AND
HARTFORD RAILROAD COMPANY.

Suffolk.    February 3, 1958. — May 5, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Negligence,* In stacking, In delivery.  *Proximate Cause.*

Evidence that employees of a railroad unloaded several thousand heavy
bags of asbestos from freight cars and stacked them on a pier for load-
ing on a ship, that four days after the completion of the stacking and
the railroad's ceasing to control the bags a stevedore attempting to
take a bag off one of the piles of bags for transfer to the ship was in-
jured when the pile fell over on him because it was not then properly
stacked warranted inferential findings that the bags in the pile had
been undisturbed during the four day interval and that the railroad's
employees had stacked the bags therein in the condition in which they
were at the time of the accident, although there was no direct evidence
to that effect, and warranted a further finding that in so stacking the
bags the railroad's employees were negligent toward the stevedore.
[459]
A railroad corporation whose employees unloaded heavy bags of asbestos
from freight cars and negligently stacked them in an improper manner
on a pier for loading on a ship would be liable to a stevedore for personal
injuries sustained by him several days later when a pile of the bags,
still in the condition in which it was left by the railroad's employees,
fell over on him as a result of that condition as he was attempting to
take a bag off the pile for transfer to the ship, even though the railroad
was not in control of the bags at the time of the accident.  [459–462]
Negligence of employees of a railroad in stacking heavy bags of asbestos
in an improper manner on a pier for loading on a ship would be the
proximate cause of personal injuries sustained by a stevedore several
days later when a pile of the bags, still in the condition in which it was
left by the railroad's employees, fell over on him as he was attempting
to take a bag off the pile for transfer to the ship, even if the owner of
the ship, in control of the bags after completion of the stacking by the
railroad's employees, was also negligent through failing in a duty to
put the bags in a safe condition: the railroad should have foreseen such
negligence on the part of the ship owner.  [462]

TORT.   Writ in the Superior Court dated June 5, 1952.
The action was tried before *O'Connell,* J.
*Thomas B. Shea,* for the plaintiff.
*William J. Noonan,* for the defendant.

SPALDING, J.   In this action of tort for negligence the plaintiff had a verdict, which was recorded under leave reserved.   Thereafter the judge entered a verdict for the defendant subject to the plaintiff's exception.   The question, therefore, is whether there was a case for the jury.   *Berwick & Smith Co.* v. *Salem Press, Inc.* 331 Mass. 196.

About 9:30 P.M. on April 29, 1952, the plaintiff, a longshoreman, was injured while working in the Castle Island Terminal at South Boston.   At the time of the accident he was working in the shed of berth 12 of the Terminal building, which is owned by the Castle Island Terminal Co., hereinafter called Terminal.   From 1949 down to the time of the accident Moore-McCormack Lines, Inc., hereinafter called Moore-McCormack, had occupied berth 12 as a tenant at will of Terminal.   Tracks of The New York, New Haven and Hartford Railroad Company, the defendant, ran along the land or south side of berth 12.   On April 22, ten freight cars containing, all told, 5,360 bags of asbestos arrived at the railroad siding next to berth 12 and between that date and April 25 were unloaded.   All of this freight was consigned for export on a Moore-McCormack ship which was to dock at berth 12.   The freight cars were unloaded by employees of the defendant and the bags of asbestos were placed by them in a "bay" or section of berth 12.[1]   Other than the fact that Moore-McCormack's tally clerk or checker indicated the "bay" in which the bags were to be placed, none of its employees had anything to do with the handling and stacking of them.   The bags were of burlap and each weighed about one hundred twenty-five pounds.   A bag "standing up on end . . . is two and one half . . . feet tall, two . . . feet wide, and one foot in thickness from face to back."

The stacking of the bags in berth 12 was completed by April 25.   The defendant's foreman testified that the bags were stacked in tiers which were ten bags in length, ten in width and five high, and that this was the "customary

---

[1] "A 'bay' was a figurative space unit enclosed by the four fifteen foot lines between columns regularly spaced which supported the roof of the shed."

manner of piling bags of asbestos." The floor of berth 12 "sloped down on an even decline and in the distance from the railroad platform to the northerly line of the bags, the drop was three to four feet."

On April 29, 1952, four days after the defendant's employees had completed placing the bags in berth 12, the plaintiff, who was employed by American Stevedores, Inc. (hereinafter called American), reported for work at berth 12 and was instructed by his foreman to load the bags on a Moore-McCormack freighter ("Moore-mac Sea") which was docked next to berth 12. Moore-McCormack had a contract with American for loading and unloading its vessels and the loading of the "Moore-mac Sea" was to be performed by American pursuant to this contract. No employee of Moore-McCormack participated in the loading.

The plaintiff and a fellow employee named Shimkus entered the "bay" where the bags of asbestos were piled. The plaintiff "reached up raising his arm to take down a bag from the top of the wall of bags" and as he did so "he saw the pile unbalance" and it fell on him, "burying him in bags up to his waist," causing the injuries for which this action is brought.

Shimkus testified that the bags which fell on the plaintiff were stacked "six or seven high . . . with butt ends out" and on top of them bags "to a height of four or five were laid crosswise, all leaning forward on the tier," and that the accepted practice in piling bags of this kind was "to crosshatch the bags, one layer lying in one direction and the next . . . lying crosswise at right angles . . . all the way to five high." Of all the asbestos he had worked on this pile was the highest he had ever seen.

One McEvoy, a longshoreman working on the job at the time of the accident, testified that the bags of asbestos in berth 12 were piled seven or eight feet high.

One Kennedy, who had had twenty-five years' experience as a longshoreman on Boston piers (but who had not seen the bags in question), testified that "putting bags to a top height of eight or ten feet above the floor by placing them

one on top of another lengthwise across . . . bags stacked butts out to a height of five bags" was "not accepted practice" because that method "did not make a strong stable wall."

It is undisputed that after the defendant completed the piling of the bags in berth 12, it had no further control over the shipment. The plaintiff offered no evidence which would directly indicate that the defendant piled the bags in the manner in which they were found at the time of the accident, or that the bags were undisturbed during the four day period between the stacking of the last bag and the accident. The defendant, on the other hand, offered evidence that it stacked the bags crosshatched and not more than five feet high. This evidence, however, the jury could disbelieve. The plaintiff's only evidence on the stacking of the bags did not go beyond showing how they were stacked at the time of the accident. This, however, was enough to take the case to the jury on this aspect of the case. The plaintiff testified that the accident happened in the extreme northeast bay of berth 12, and the defendant introduced evidence that it piled bags in this bay. These bags weighed one hundred twenty-five pounds apiece and there were over five thousand of them. It is unlikely that during the four day storage period anyone would take down the bags and restack them again in the same place. We think that, without resort to surmise or conjecture, the jury could reasonably have inferred that the bags were undisturbed during the four day period, and that it was the defendant which placed them in the condition in which they were found at the time of the accident. See *Sargent* v. *Massachusetts Accident Co.* 307 Mass. 246, 250. And in view of the plaintiff's evidence concerning the manner in which the bags were piled when he was injured, a jury could find that while the defendant was in control of the bags, it had violated a duty of care owed to persons who might work on or near the pile.

A more difficult question is whether the defendant's lack of control of the bags at the time of the accident relieved it of responsibility. Before our decision in *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92, the general rule in this Commonwealth

was that a manufacturer or supplier of a chattel was not liable for negligence to a remote vendee or other person with whom he had no contractual relation. See *Yardley* case at page 100. This general rule, however, was subject to many exceptions. See *Yardley* case at pages 101–103. But the *Yardley* case held that a manufacturer was liable in tort to remote vendees or other persons for his negligence, the court saying at page 96, "In principle, a manufacturer or other person owning or controlling a thing that is dangerous in its nature or is in a dangerous condition, either to his· knowledge or as a result of his want of reasonable care in manufacture or inspection, who deals with or disposes of that thing in a way that he foresees or in the exercise of reasonable care ought to foresee will probably carry that thing into contact with some person, known or unknown, who will probably be ignorant of the danger, owes a legal duty to every such person to use reasonable care to prevent injury to him."

The pre-Yardley rule, which was based on a dictum of Lord Abinger in *Winterbottom* v. *Wright*, 10 M. & W. 109, applied not only to manufacturers but to persons who furnished goods and services. Thus in *Cunningham* v. *T. A. Gillespie Co.* 241 Mass. 280 (decided twenty-four years prior to the *Yardley* case), it was held that a contractor who negligently left a sidewalk in a defective condition was not liable to a person injured by the defective condition after the completed work had been accepted by the city and the contractor had no further control over the sidewalk.[1] And it has been held that a person injured by a defect in a freight car had no cause of action against the owner of the freight car, once the car was out of the control of the owner and in the control of another railroad, even

---

[1] To the extent that the court in the *Gillespie* case relied on the now discredited case of *Winterbottom* v. *Wright*, 10 M. & W. 109, it should be noted that the trend is away from that case and decisions following it. Prosser, Torts (2d ed.) § 85. In Restatement: Torts, § 385, the rule is stated as follows: "One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others within or without· the land for bodily harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor under the same rules as those stated in §§ 394 to 398, 403 and 404 as determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others." But see note in 13 A. L. R. (2d) 191.

though the owner was negligent in failing to discover and correct the defect. *Glynn* v. *Central Railroad,* 175 Mass. 510. *McNamara* v. *Boston & Maine Railroad,* 202 Mass. 491, 499–500.

But in the area of furnishing services, as well as the area of manufacturing, there were exceptions to the pre-Yardley rule. Thus when a railroad furnished a defective freight car to a consignee, instead of another railroad, as part of the movement of freight, liability was imposed on the railroad for an injury to an employee of the consignee caused by a negligently maintained defect in the freight car, even though the car was in the consignee's control and being moved by the consignee's equipment. *D'Almeida* v. *Boston & Maine Railroad,* 209 Mass. 81, 87–88. See also *Hale* v. *New York, New Haven & Hartford Railroad,* 190 Mass. 84. One who built and installed an oven for a tenant was held liable for damage to the landlord caused by the defective installation of the oven. *Barabe* v. *Duhrkop Oven Co.* 231 Mass. 466, 468. One who erected a scaffolding for the use of a painting contractor was held liable for the injury to an employee of the contractor caused by the use of defective materials in the scaffold. *Barrett* v. *Builders' Patent Scaffolding Co. Inc.* 311 Mass. 41. In both of the cases last cited the party held liable had no control over the defective property at the time of the damage and no contractual relationship with the person injured. And where an unsafe condition has been created incident to a delivery of materials, causing damage to persons properly on the property, the person making the delivery has been held liable, even though he has left the premises and has no control over either the premises or the unsafe condition. *Gillis* v. *Cambridge Gas Light Co.* 202 Mass. 222 (plaintiff fell into coal hole by reason of cover improperly replaced by defendant in making delivery of coal to another). *Leahy* v. *Standard Oil Co. of New York,* 224 Mass. 352 (plaintiff injured by explosion caused by improper delivery of gasoline by defendant on premises of plaintiff's employer). *Dennehy* v. *Jordan Marsh Co.* 321 Mass. 78, 80–81 (liability imposed

on defendant which unpacked refrigerator on premises of customer and left crate in an unsafe condition so that a third person rightfully on the premises was injured.  See *Messina* v. *Richard Baird Co., ante*, 8, 13–14.

We think that in the case at bar the defendant cannot be relieved of responsibility because it was not in control of the asbestos at the time of the accident.  Both the principle on which the *Yardley* case was decided, and the authority of the cases cited in the preceding paragraph militate against such a result.  It is true that in the *Gillis, Leahy* and *Dennehy* cases the negligent delivery was incident to a sale made by the defendant, and in the case at bar the defendant was a carrier, and not a retailer making a delivery incident to a sale.  But we do not think that this difference is material. The essential element common to all of these cases and the basis for imposing liability was the negligent act of the defendant arising out of the delivery.

One more problem remains.  In the *Yardley* case, we indicated at page 99 that "the causal relation of a manufacturer's negligence to the injury may be broken by the intervention of a superseding cause . . . such as some negligence or fault of another, whereby the manufacturer's negligence ceases to be the proximate cause of the injury."  In the present case a jury conceivably could have found negligence on the part of Moore-McCormack, which was in control of the asbestos and allowed it to remain in an unsafe condition. We are of opinion, however, that even if there was intervening negligence on the part of Moore-McCormack it does not relieve the defendant of liability.  We think that the defendant should have foreseen that, even though Moore-McCormack had a duty to make the piles safe, it might not do so.  The case in this respect falls well within the principles set forth in *Lane* v. *Atlantic Works*, 111 Mass. 136, 139–140, *Leahy* v. *Standard Oil Co. of New York*, 224 Mass. 352, 360, and *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 517.

*Exceptions sustained.*
*Judgment on the verdict returned*
*by the jury.*