ROBERT E. McDONOUGH, JR., & another *vs.* WILLIAM T. WHALEN
(and a companion case[1]).

Bristol.    January 16, 1973. — December 4, 1973.

Present: ROSE, GOODMAN, & ARMSTRONG, JJ.

*Negligence,* Of designer, Of contractor. *Deceit. Emotional Distress. Damages,* For emotional distress.

Even assuming that a defendant negligently designed a defective septic system and another defendant negligently installed it in a new home purchased by the plaintiffs from the builder, neither was liable to the plaintiffs for such negligence, where the defects in the septic system did not result in personal injury or physical damage to the property, but only decreased the value of the property, necessitated ex-

---

[1] Robert E. McDonough, Jr., & another *vs.* Roger G. DesVergnes.

penditures to make the septic system function as it should, and caused one of the plaintiffs to suffer emotional distress. [575-578]

Two ACTIONS OF TORT.   Writs in the Superior Court dated September 1, 1967.

The actions were tried before *Ponte, J.*

*Jarvis Hunt* for William T. Whalen.

*Henry G. Barrett (Stephen D. Clapp* with him) for Roger G. Des Vergnes.

*Donald J. Fleming* for the plaintiffs.

ARMSTRONG, J.   These actions of tort, which were tried together to a jury, were brought by McDonough and his wife to recover damages resulting from the defective operation of a septic system on premises they had purchased in North Attleborough. There were two counts against the defendant Whalen for negligent design of the septic system; two against Whalen for negligent inspection and approval of the system in his capacity as agent of the North Attleborough board of health; and, in the action against the defendant DesVergnes, two counts for negligence in the installation of the system. In each instance, the first of the two counts was for pecuniary loss resulting from depreciation in the value of the property, loss of use thereof, and expenditures aimed at identifying and correcting the problem. The second was for McDonough's mental anguish. The jury returned verdicts for the plaintiffs on each count, awarding $1,000 on those for pecuniary loss, and $4,000 on those for mental anguish. The defendants' bill of exceptions discloses the following evidence.

In 1966 the plaintiff McDonough obtained employment in the North Attleborough area, and he and his wife were looking for a house. It was their first experience in purchasing a home. In August, 1966, McDonough visited the premises involved in these actions. The house was then about three-fourths completed. Since there was no town sewerage, the house required a private septic system, which had already been installed. The plaintiffs purchased the house from the builder, Fred's Realty Company, Inc. in November, 1966. It cost them $22,500 plus expenses.

In March or April, 1967, the plaintiffs' yard became inundated with water, and they detected the odor of

sewage. In June they found sewage flowing on their land from the leaching field. They complained to Fred's Realty Company, Inc., and to the North Attleborough board of health. In June, 1967, Whalen, who had previously inspected the system in his capacity as agent of the North Attleborough board of health and had certified that it had been installed in accordance with the permit issued by the board, returned in the same capacity to inspect the premises, and advised the plaintiffs to cut down on their use of water. Thereafter, they bathed their children in the tub together rather than separately, used a bowl of water instead of running water, washed dishes only once a day, and curtailed use of their washing machine, sometimes using a laundromat instead. The children were not allowed to play in the yard. The sewerage problem persisted. At some time Fred's Realty Company, Inc. constructed a drainage area in the rear of their lot. This alleviated the drainage problem but not the sewerage problem. The plaintiffs engaged an attorney, and then a professional engineer who inspected the premises twice in late February or March, 1968. Thereafter, the plaintiffs commenced actions against the builder, Fred's Realty Company, Inc.; against Whalen, who in various capacities had done the percolation test on the premises and had designed the septic system for the builder, and then acting for the board of health, had inspected the system and certified it to have been properly installed; and against DesVergnes, who had installed the septic tank and leaching field for the builder. The action against Fred's Realty Company, Inc. was discontinued when the latter agreed to repurchase the house, for a price not disclosed by the bill of exceptions.[2] On four or five occasions, between June, 1968, and September or October, 1968, McDonough saw a doctor in Boston for nervous upset.

Both Whalen and DesVergnes moved for directed verdicts, which were denied. Both took exceptions thereto.

---

[2] The bill of exceptions states: "The plaintiffs suffered a loss of approximately $1,000.00 in out-of-pocket expenses as a result of the transaction."

Whalen relies principally on the immunity accorded public officers against liability for damages resulting from nonfeasance in the exercise of their discretionary functions. See *Trum* v. *Paxton,* 329 Mass. 434, 438-439 (1952); *Gildea* v. *Ellershaw,* 363 Mass. 800, 820 (1973). DesVergnes relies on two arguments: first, that his sole duty was to install the septic system according to the plan furnished by the builder, that he did so, and that any defect in the system stemmed not from his installation but from the defective plan; and second, that even if he did install the system negligently, his sole duty was to the builder who hired him, and who accepted his work, and thus that he is not liable for damages thereafter sustained by third parties. He relies for the second argument on *Cunningham* v. *T. A. Gillespie Co.* 241 Mass. 280 (1922). In addition, both defendants argue that it was error for the trial judge to allow the jury to award damages for mental suffering.

Laying to one side the question of duty, there was evidence from which the jury could have found negligence on the part of Whalen in conducting the percolation test, in designing the system, and in the inspection and certification of the system, and on the part of DesVergnes in its installation.

A difficult question is presented by DesVergnes' reliance on *Cunningham* v. *T. A. Gillespie Co.* 241 Mass. 280 (1922), which held that an independent contractor who had built a subway tunnel and had incidentally worked on the sidewalk above it, had completed his work, had had it accepted by the city, and who retained no control over it was not thereafter liable in tort for injuries resulting from a defect in the sidewalk's construction. The *Cunningham* case, however, was decided almost twenty-four years before *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92 (1946), and has been questioned as an authority by later cases. See *Flaherty* v. *New York, N. H. & H. R.R.* 337 Mass. 456, 459-462 (1958); *Donahue* v. *Stephens,* 342 Mass. 89, 93 (1961). See also *Romano* v. *Rossano Constr. Co. Inc.* 341 Mass. 718, 722-723 (1961); *Christman* v. *Shagoury Constr. Co. Inc.* 349 Mass. 113, 115 (1965).

We need not decide that question, however, because we are of the opinion that the plaintiffs cannot prevail against DesVergnes for another, more fundamental, reason. The tort liability for negligence by a supplier of defective products extends to negligent manufacture, processing or handling which foreseeably results in physical harm to persons (*Carter* v. *Yardley & Co. Ltd., supra,* at 96; Restatement 2d: Torts, §§ 323, 324A, 395-408; Harper & James, Torts, § 28.9) or to property (*Brown* v. *Bigelow,* 325 Mass. 4 [1949]). In the absence of personal injury[3] or physical damage to property, the negligent supplier of defective products is not ordinarily liable in tort[4] to a purchaser for simple pecuniary loss caused by defective or inferior merchandise. *Karl's Shoe Stores Ltd.* v. *United Shoe Mach. Corp.* 145 F. Supp. 376 (D. Mass. 1956). Neither the declaration nor the proof makes out a case of physical damage to property of the plaintiffs. The damage in this case was that the property was worth less than it would have been worth if the septic system worked as it should have, and that expenditures were required to make it function as it should.[5]

---

[3] Questions of foreseeability aside, the plaintiff's emotional distress would not qualify as a personal injury justifying the imposition of tort liability, if for no other reason than that it would be noncompensable in the absence of physical injury even if liability could be otherwise established. *Spade* v. *Lynn & Boston R.R.* 168 Mass. 285, 290 (1897). *Sullivan* v. *H. P. Hood & Sons, Inc.* 341 Mass. 216, 221-223 (1960). This is not a case of intentional or reckless conduct which is extreme and outrageous. *George* v. *Jordan Marsh Co.* 359 Mass. 244, 254 (1971).

[4] Statute 1971, c. 670, § 1, which amended G. L. c. 106, § 2-318, has vastly broadened the contract liability of the manufacturer, seller and supplier of goods subject to Article 2 of the Uniform Commercial Code, by eliminating privity as a condition of recovery for breaches of warranties, both express and implied. No question arises in this case as to whether the sale or installation of the septic system would be governed by Article 2, because the installation took place before the effective date of the amendment.

[5] It is not clear whether the plaintiff could recover even if this were a case of physical damage to property. With respect to property damage arising from want of proper care in the construction of a house, tort liability at the present time appears to be more restrictive than might be deduced from the general principles of *Carter* v. *Yardley & Co. Ltd.* and *Brown* v. *Bigelow,* both *supra.* Two later cases, *Spencer* v. *Gabriel,* 328 Mass. 1 (1951), and *Donahue* v. *Stephens,* 342 Mass. 89 (1961), hold that a seller of a house is not liable in tort to the purchaser for property damage resulting from the seller's own negligent construction. It is difficult to find a satisfactory basis for distinguishing in tort between negligent construction by a seller and negligent construction by an independent contractor

What has been said respecting the liability of Des Vergnes for negligent installation applies as well to that of Whalen for negligently conducting the percolation test and designing the septic system. In performing those acts he was acting for the builder, in his private capacity.

In the inspection and certification of the septic system, Whalen was acting not for the builder but for the town, as an agent of the board of health. It is unnecessary, however, to consider whether an inspector for the town might be under a broader duty than the builder and installer of the system he inspects, and might be held liable to a purchaser who relies on the representations in the inspection certificate. There is no showing in this case that the plaintiffs knew of such representations at all, much less that they justifiably relied thereon to their injury. Such reliance is essential in an action for negligent misrepresentation. *Craig* v. *Everett M. Brooks Co.* 351 Mass. 497, 501 (1967). Restatement: Torts, § 552. See *Gabriel* v. *Borowy,* 324 Mass. 231, 237 (1949); Prosser, Torts (4th ed.) § 108.

In view of the foregoing, we need not consider Whalen's claim of immunity as a public officer or DesVergnes' remaining exceptions.

In both cases, the defendants' exceptions to the denial of their motions for directed verdicts are sustained as to all counts, and judgments are to enter for the defendants on all counts.

*So ordered.*

---

working for the seller. In England it has recently been held by the Court of Appeal that a line of cases exempting the owner-builder from tort liability to the purchaser (*Bottomley* v. *Bannister,* |1932| 1 K.B. 458, and *Otto* v. *Bolton & Norris,* [1936] 2 K.B. 46) has been impliedly overruled by *Donoghue* v. *Stevenson,* |1932] A.C. 562 (the English equivalent of *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92 [1946]). *Dutton* v. *Bognor Regis U.D.C.,* |1972] 1 Q.B. 373, 392-394 (Lord Denning, M.R.) and 401-402 (Sachs, L.J.) See *Albano* v. *Western Constr. Corp.* 357 Mass. 647, 652 (1970); *McMahon* v. *M. & D. Builders, Inc.* 360 Mass. 54, 62 (1971).