ROBERT E. McDONOUGH, JR., & another *vs.*
WILLIAM T. WHALEN
(and a companion case[1]).

Bristol.    April 4, 1974. — June 24, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Negligence*, Of designer, Of contractor. *Emotional Distress. Damages*, For emotional distress.

Privity of contract is no longer required in order to hold a builder of houses or other realty structures liable for injuries or damage caused by his negligence where it is foreseeable that the contractor's work, if negligently done, may cause damage to the property or injury to persons living on or using the premises. [510-513]
Where there was evidence that the defendant had negligently designed, tested and inspected a septic system and that as a result sewage

---

[1] Robert E. McDonough, Jr., & another *vs.* Roger G. DesVergnes.

flowed over the plaintiffs' land, resulting in loss of use of the property and depreciation in its value, the plaintiffs could recover damages for injury to their property even though there was no contractual relation between them and the defendant. [514-515]

Where there was evidence that the defendant had negligently installed a septic system and that as a result sewage flowed over the plaintiffs' land, resulting in loss of use of the property and depreciation in its value, the plaintiffs could recover damages for injury to their property even though there was no contractual relation between them and the defendant. [516]

Inasmuch as there was no evidence that a septic system was required to be designed by an agent of a town's board of health, one who designed a septic system for a builder, and later as an agent of the town's board of health inspected and certified it, was acting in a private capacity at least as to the design of the system and thus was not entitled to the limited immunity from liability for negligence afforded public officers. [515]

Testimony by the plaintiff that as a result of overflow of sewage on his property, caused by the defendants' negligent design and installation of a septic system, he was "nervous and uptight" and visited a physician on four or five occasions during a three or four month period, would be insufficient to warrant his recovery for mental anguish even if a person were held liable for negligent conduct causing emotional distress without accompanying physical injuries. [516-518]

TWO ACTIONS OF TORT. Writs in the Superior Court dated September 1, 1967.

The actions were tried before *Ponte, J.*

*Donald J. Fleming* for the plaintiffs.

*Jarvis Hunt* for the defendant Whalen.

*Stephen D. Clapp* (*Henry G. Barrett & David G. Toone* with him) for the defendant Des Vergnes.

QUIRICO, J.   The plaintiffs Robert E. McDonough, Jr., and Suellen McDonough brought these actions of tort against the defendants William T. Whalen (Whalen) and Roger G. DesVergnes (DesVergnes) to recover for personal injuries and property damage allegedly caused by the defendants' negligent design and installation of a sewerage or septic system for the plaintiffs' house.

· The facts may be summarized. The plaintiffs are a married couple with three young children. In November, 1966, they purchased a house at 107 Stanson Drive, North

Attleborough, from Fred's Realty Co., Inc., the builder, for $22,500 plus expenses. The plaintiffs took occupancy in September, 1966, before the house was finished, but the house was completed at the time title passed in November. Since there was no town sewerage, the house had a private septic system.

Whalen had designed the septic system for the builder, using a form of design he had prepared for the North Attleborough board of health. He had also performed the required percolation test on the house lot before the septic system was installed. He was paid by the builder for both these services. Whalen, in his capacity as agent of the North Attleborough board of health, inspected the septic system once it was installed and certified that its installation was done in accordance with the board's construction permit. DesVergnes actually installed the system for the builder in May, 1966.

In the spring of 1967, about six months after the plaintiffs moved in, their lot surrounding the house became flooded with water, and they detected the odor of sewage; sewage was found to be flowing over their land from the septic system's leaching field. The plaintiffs complained to the builder and to the board of health. Whalen, again in his capacity as the board's agent, came to inspect the premises in June, 1967. He advised the plaintiffs to curtail their use of water. The plaintiffs did so in several respects, and they did not permit their three children to play in the yard because of the problem with the septic system.

At some time the builder constructed a drainage area in the rear of the lot. While this alleviated the drainage problem, it did not help the sewerage problem. In February, 1968, the plaintiffs engaged an engineer to devise a solution to the sewerage problem. Thereafter, they commenced an action against the builder and the present actions against Whalen and DesVergnes. At some point before trial the builder repurchased the house from the plaintiffs, and their action against it was discontinued. The plaintiffs suffered a loss of about $1,000 in out-of-pocket

expenses as a result of the transaction.[2] After the house was repurchased by the builder the plaintiff Robert McDonough visited a doctor four or five times over a three or four month period beginning in June, 1968.

The plaintiffs' amended declaration against Whalen contains four counts: the first and second allege that Whalen negligently designed the septic system in question; the third alleges that Whalen as agent of the North Attleborough board of health negligently inspected and approved the plaintiffs' property for residential construction; the fourth alleges that in such capacity he also negligently issued a certificate of compliance for the septic system. In their first and third counts the plaintiffs sought recovery for property damage consisting of pecuniary loss and expense, loss of use, and depreciation in the property's value; in the second and fourth counts the plaintiff Robert McDonough sought recovery for "great anguish of mind and embarrassment." The plaintiffs' amended declaration against DesVergnes contained two counts, both alleging that he had negligently installed the sewerage system at their house. The first count sought recovery for the same elements of property damage as alleged in their action against Whalen; the second sought recovery for "great mental anguish and embarrassment."

The actions were consolidated and tried together. The jury returned verdicts for the plaintiffs against both defendants, awarding $1,000 on the counts alleging property damage and $4,000 to Robert McDonough on the counts alleging mental anguish. Thereafter, the cases went before the Appeals Court on Whalen's and DesVergnes's consolidated bill of exceptions, which included their exceptions to the denial of their motions for directed verdicts.

The Appeals Court sustained the defendants' exceptions and ordered judgments to be entered for the defendants on all counts. *McDonough* v. *Whalen,*      Mass. App. Ct.      ,      (1973)[a]. The case is presently before us on our

---

[2] The repurchase price is not disclosed in the record before us.

[a] 304 N.E. 2d 199, 202.

allowance of the plaintiffs' application for further appellate review. G. L. c. 211A, § 11. S.J.C. Rule 3:24, § 7, 359 Mass. 838 (1972).

The Appeals Court's decision was based neither on a conclusion that the plaintiffs' proof of negligence on the part of either Whalen or DesVergnes was insufficient[3] nor on the arguments apparently asserted by the two defendants (and which they raise again before us here). Rather, the court held that the plaintiffs were not entitled to prevail because neither the plaintiff Robert McDonough's alleged mental anguish nor the plaintiffs' alleged property damage would qualify as the type of personal injury or physical property damage "justifying the imposition of tort liability" on the defendants within the theoretical framework of the plaintiffs' actions. *Id.* at      , and fn. 3[b].

1. We consider first the plaintiffs' property damage claim. The Appeals Court's opinion makes clear that it considered the plaintiffs' actions as falling within the line of cases imposing liability in tort on manufacturers or suppliers of chattels for negligently made products despite the lack of privity, first adopted in *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92, 96-97, 104 (1946), and later applied to permit recovery for property damage in *Brown* v. *Bigelow*, 325 Mass. 4, 5-6 (1949).[4] We agree with the Appeals Court's analysis of these actions. However, for reasons discussed later in this opinion, we do not agree that under such an analysis the plaintiffs are precluded from recovering the property damages they claim.

Notwithstanding the existence of the *Carter* v. *Yardley &*

---

[3] On the contrary, the court expressly stased that "there was evidence from which the jury could have found negligence on the part of Whalen ... and on the part of DesVergnes."      Mass. App. Ct. at      (1973) (304 N. E. 2d at 201).

[b] 304 N. E. 2d at 201, and fn. 3.

[4] The court stated that "[t]he tort liability for negligence by a supplier of defective products extends to negligent manufacture, processing or handling which foreseeably results in physical harm to persons ... or to property .... In the absence of personal injury or physical damage to property, the negligent supplier or defective products is not ordinarily liable in tort to a purchaser for simple pecuniary loss caused by defective or inferior merchandise [citations and footnotes omitted]."      Mass. App. Ct. at      (1973) (304 N. E. 2d at 201).

*Co.* rule in Massachusetts and its counterpart in most other jurisdictions, it has traditionally been held that building contractors were not liable for injuries or property damage sustained by persons not in contractual relation with them after their work was completed and accepted by the owner or their employer.[5] In *Cunningham* v. *T. A. Gillespie Co.* 241 Mass. 280 (1922), this court applied such a rule of nonliability to an independent contractor who had completed and turned over the control of allegedly negligent construction work he had done on a city sidewalk before the plaintiff was injured. *Id.* at 282-283. However, as the Appeals Court notes, the *Cunningham* case was decided long before *Carter* v. *Yardley & Co. Ltd., supra*, and has been questioned in later cases. See *Flaherty* v. *New York, N. H. & H. R.R.* 337 Mass. 456, 459-462 (1958); *Donahue* v. *Stephens*, 342 Mass. 89, 93 (1961). But see *Christman* v. *Shagoury Constr. Co. Inc.* 349 Mass. 113, 114-115 (1965).

We believe that it is time to overrule expressly the rule stated in the *Cunningham* case. As numerous cases in other jurisdictions and many commentators have pointed out,[6] there is no sound reason to treat a builder of houses or other realty structures differently from a manufacturer of chattels. A house which is constructed in a negligent manner is just as likely to cause substantial harm to persons therein as are the many types of goods and services falling within the scope of the *Carter* v. *Yardley & Co.* rule. And the

---

[5] Annotation, 13 A. L. R. 2d 191 (1950). Annotaton, 58 A. L. R. 2d 865 (1958). Harper & James, Torts, § 28.10, pp. 1556-1557 (1956). Prosser, Torts (4th ed.) § 104, pp. 680-681 (1971).

[6] See, e.g., *Hanna* v. *Fletcher*, 231 F. 2d 469, 473 (D. C. Cir. 1956), cert. den. sub nom. *Gichner Iron Works, Inc.* v. *Hanna*, 351 U. S. 989 (1956); *Pastorelli* v. *Associated Engrs. Inc.* 176 F. Supp. 159, 164-165 (D. R. I. 1959) (but see *Maggi* v. *De Fusco*, 107 R. I. 278, 283-284 [1970]); *Dow* v. *Holly Mfg. Co.* 49 Cal. 2d 720, 724-725 (1958); *Stewart* v. *Cox*, 55 Cal. 2d 857 (1961); *Sabella* v. *Wisler*, 59 Cal. 2d 21, 28 (1963); *Hunter* v. *Quality Homes, Inc.* 45 Del. 100, 106 (1949); *Kapalczynski* v. *Globe Constr. Co.* 19 Mich. App. 396, 402 (1969); *Russell* v. *Arthur Whitcomb, Inc.* 100 N. H. 171, 173 (1956); *Schipper* v. *Levitt & Sons, Inc.* 44 N. J. 70, 81-88 (1965); *Totten* v. *Gruzen*, 52 N. J. 202, 207-210 (1968); *Foley* v. *Pittsburgh-Des Moines Co.* 363 Pa. 1, 34 (1949); *Fisher* v. *Simon*, 15 Wis. 2d 207, 211-219 (1961); Restatement 2d: Torts §§ 385, 394-398, 403-404 (1965); Annotation, 58 A. L. R. 2d 865, 891-898 (1958); Prosser, Torts (4th ed.) § 104, pp. 680-681 (1971). Cf. *Inman* v. *Binghamton Housing Authy.* 3 N. Y. 2d 137, 144-145 (1957).

ordinary person buying such a house is in no better position to discover hidden dangers caused by the negligent construction than is the purchaser of a defective bottle of perfume, *Carter* v. *Yardley & Co. Ltd.*, *supra*, or of an automobile, *MacPherson* v. *Buick Motor Co.* 217 N. Y. 382 (1916). There is no sound reason why he should be prevented from recovering for property damage or personal injury merely because he is not in privity with the builder or contractor responsible for such work.[7] We therefore hold that a builder or contractor may be liable for injuries or damage caused by his negligence to persons with whom he has no contractual relation and even though his work is completed and accepted by the owner before the injuries or damage occurred. Liability will be imposed, however, only if it is foreseeable that the contractor's work, if negligently done, may cause damage to the property or injury to persons living on or using the premises.[8]

*Spencer* v. *Gabriel*, 328 Mass. 1 (1951), and *Donahue* v. *Stephens*, 342 Mass. 89 (1961), cited by the Appeals Court[9] as raising doubts about the status in Massachusetts of the rule stated above, are perhaps distinguishable from the case presently before us. In each of these cases, the plaintiff

---

[7] While we refer here to the "builder" and "contractor," we see no reason to distinguish between them and a subcontractor responsible for only one aspect or part of the construction. The duty of care owed by the latter with respect to his particular work is not altered by the fact that someone else is responsible for the construction as a whole. Such a distinction has not been drawn in other jurisdictions. See, e.g., *Hunter* v. *Quality Homes, Inc.* 45 Del. 100 (1949); *Totten* v. *Gruzen*, 52 N. J. 202 (1968); *Pastorelli* v. *Associated Engrs. Inc.* 176 F. Supp. 159, 165-166 (D. R. I. 1959).

Similarly, we do not distinguish between the builder or contractor responsible for the construction or installation work in a house and the person responsible for its design. See *Totten* v. *Gruzen*, 52 N. J. 202, 210 (1968); *Inman* v. *Binghamton Housing Authy.* 3 N. Y. 2d 137 (1957); Restatement 2d: Torts, *supra*, §§ 395, comment f, 398 (1965); annotation, 76 A. L. R. 2d 91 (1961).

[8] One aspect of the rule we have adopted should be noted. In this case the plaintiffs are the original purchasers of the house with the septic system claimed to have been negligently designed and installed. They initially brought an action against Fred's Realty Co., Inc., the builder, as well as against the present defendants, but the action was discontinued. Therefore the question does not arise whether a subsequent purchaser of the plaintiffs' house, claiming to have suffered damages for the same or additional elements of negligent construction, could bring a new action against any or all of these three original defendants.

[9]        Mass. App. Ct. at        , fn. 5 (1973) (304 N. E. 2d at 201, fn. 5).

vendee of a house sued the defendant builder-vendor to recover for property damage caused by allegedly negligent construction. However, both actions purported to be framed as actions for deceit and misrepresentation with respect to the sales of the houses, not as actions to recover for the negligent construction itself.[10] We held in each case that the defendant was not liable as a matter of law because the plaintiffs had shown nothing but a failure to disclose when there was no duty to do so. 328 Mass. at 2 (1951). 342 Mass. at 92 (1961). Nevertheless, to the extent that these cases and others similar thereto seem in conflict with the rule of liability for negligent construction we adopt today, we do not follow them.[11]

2. Applying the rule we have adopted above to the facts in this case, we hold that the plaintiffs are entitled to recover for their property damage. The Appeals Court stated that the plaintiffs had failed to make out a case of "physical damage" to their property and therefore could not recover.       Mass. App. Ct. at      -      (1973).[c][12] It is not clear what distinguishes "physical" from other types of property damage. We need not consider the issue here, however, because we believe that in any event the plaintiffs did suffer physical damage to their property in the form of sewage flowing over their land. The recovery they seek for

_____

[10] Compare the discussion in the *Donahue* case concerning the liability of the defendant heating subcontractor. 342 Mass. at 92-94 (1961).

[11] Cases clearly distinguishable from the present case, however, are those raising the issue whether a builder-vendor of a house impliedly warrants to the purchaser that the house is constructed in a good and workmanlike manner and is fit for human habitation. See *Albano* v. *Western Constr. Corp.* 357 Mass. 647, 652 (1970); *McMahon* v. *M & D Builders, Inc.* 360 Mass. 54, 62-63 (1971). Cf. *Boston Housing Authy.* v. *Hemingway,* 363 Mass. 184, 198-199 (1973), holding that a warranty of habitability is implied in the rental of any premises for dwelling purposes. The issue of such an implied warranty was not raised by the parties and we do not consider it.

[c] 304 N. E. 2d at 201.

[12] The Appeals Court cited *Karl's Shoe Stores, Ltd.* v. *United Shoe Mach. Corp.* 145 F. Supp. 376 (D. Mass. 1956), in support of this proposition. Other cases holding that a manufacturer or supplier of chattels is not liable for financial or pecuniary losses such as loss of business, profits or good will include: *Seely* v. *White Motor Co.* 63 Cal. 2d 9, 15-17 (1965); *Anthony* v. *Kelsey-Hayes Co.* 25 Cal. App. 3d 442, 446-447 (1972); *A. J. P. Contr. Corp.* v. *Brooklyn Builders Supply Co.* 171 Misc. (N. Y.) 157 (1939), affd. 258 App. Div. (N. Y.) 747 (1939); *Trans World Airlines, Inc.* v. *Curtiss-Wright Corp.* 1 Misc. 2d (N. Y.) 477, 481-482 (1955).

the loss of use of the property and the depreciation in its value as indicated in part by the cost of repairs for the septic system all arise from this physical damage.

The traditional rule of damages for wrongful injuries to real property has permitted recovery for these types of losses. There appears to be no reason why the same rule should not be applicable in this case.[13] Accordingly, we hold that the plaintiffs are entitled to recover damages they claim for injury to their property, on proof that (1) Whalen or DesVergnes or both were negligent with respect to the design and installation of the septic system; (2) the property damage the plaintiffs sustained was causally related to such negligence; and (3) they actually suffered such damage.

3. We turn to the question whether the evidence summarized in the record before us was sufficient, if believed, to satisfy these three requirements for recovery.

Treating the last requirement first, we believe there was sufficient evidence to prove the damages the plaintiffs claim. Their loss of $1,000 in connection with the builder's repurchase of their house was not disputed. Nor was there contradiction of· their testimony that they lost the full enjoyment of their premises as a result of the faulty septic system. The question then is whether Whalen or Des Vergnes or both are liable for this damage to the plaintiffs' property.

We consider the case against Whalen. When the evidence is examined in the light most favorable to the plaintiffs, it is clear that there was sufficient evidence to warrant the jury in finding him negligent. There was testimony by the plaintiffs' expert witness that the septic system was improperly designed and failed to meet the governing require-

---

[13] See 63 Am. Jur. 2d, Products Liability, § 224 (1972); 22 Am. Jur. 2d, Damages, §§ 131, 132 (1965); note, 7 B. C. Ind. & Commercial L. Rev. 767, 771 (1966). Several cases in other jurisdictions have permitted recovery against contractors or builders found liable for negligent work for the same types of property damage the plaintiffs seek in this case. See *Stewart* v. *Cox,* 55 Cal. 2d 857, 866 (1961); *Sabella* v. *Wisler,* 59 Cal. 2d 21, 28 (1963); *Fisher* v. *Simon,* 15 Wis. 2d 207, 211, 214 (1961). Cf. *Santor* v. *A & M Karagheusian, Inc.* 44 N. J. 52, 59 (1965).

ments of art. XI of the State Sanitary Code. A finding that the sanitary code regulations had been violated would constitute evidence of negligence. *Afienko* v. *Harvard Club of Boston, ante,* 320, 330 (1974), and cases cited. The jury could reasonably infer from the evidence that the property damage the plaintiffs suffered was caused by Whalen's negligent design of the septic system. In addition there was evidence which tended to show that Whalen had performed the required percolation test and had inspected the septic system after its installation in an improper and negligent manner.

Whalen contends that he cannot be held liable for negligence in designing, testing, inspecting, or certifying the plaintiffs' septic system because in performing all these tasks he was acting at the request of the North Attleborough board of health and thus as a public official. As such, he argues, he is entitled to the limited immunity from liability for negligence afforded public officers with respect to decisions made or acts performed within the scope of their authority. *Gildea* v. *Ellershaw*, 363 Mass. 800, 820 (1973).

We do not agree that the immunity applies to everything Whalen did in this case. It does not appear from art. XI of the State Sanitary Code nor from any other evidence in the record that a septic system was required to be designed by an agent of the town's board of health. Nor does G. L. c. 111, §§ 27, 30, which authorize boards of health to appoint and employ necessary officers and agents, contain such a requirement. Whalen was paid by the builder for designing the septic system and for performing the percolation test. It is thus clear that at least as to the design of the system, Whalen was acting in a private capacity, and *Gildea* v. *Ellershaw, supra,* offers him no defence.

As we have already concluded that there was sufficient evidence for the jury to find Whalen negligent with respect to his design, we hold that the judge properly denied his motion for a directed verdict on the counts claiming property damage. There is thus no need to consider the questions (1) whether Whalen was acting as a public

official in performing the percolation tests or (2) whether in the light of his private interest in at least the design of the septic system he is entitled to immunity from liability with respect to his inspection and certification of the system as the agent of the North Attleborough board of health.

We also conclude that there was sufficient evidence to warrant the jury in finding DesVergnes liable for the negligent installation of the septic system. There was testimony that the leaching field for the septic system was not placed at least four feet above ground water level as required by art. XI of the State Sanitary Code and the town's construction permit. As was true of the plaintiffs' case against Whalen, a finding that the sanitary code regulations had been violated would constitute evidence of negligence. There was also testimony that the plaintiffs' damage was causally related to the faulty installation. We therefore hold that the judge also properly denied Des Vergnes's motion for a directed verdict on the plaintiffs' count for property damage.

4. Finally, we consider the plaintiff Robert Mc Donough's claim of recovery for "great anguish of mind and embarrassment"[14] allegedly caused by Whalen's and Des Vergnes's negligent work. McDonough contends that his case raises squarely the question whether a person may "recover for severe emotional distress caused by the negligent acts of another in the absence of any other physical injury." Since this court's decision in *Spade* v. *Lynn & Boston R.R.* 168 Mass. 285 (1897), the rule in the Commonwealth has been that recovery is not permitted for emotional distress caused in such manner. The Appeals Court clearly believed that the *Spade* case governed Robert McDonough's claim. See *McDonough* v. *Whalen*, Mass. App. Ct. at        , fn. 3 (1973)[d].[15]

---

[14] Although he seeks to recover for both mental anguish and embarrassment we consider only the former. As a general principle, mere "embarrassment," without more, is not the type of emotional injury for which recovery would be warranted. See *George* v. *Jordan Marsh Co.* 359 Mass. 244, 253-254 (1971); Restatement 2d: Torts, §§ 306, 313, comment a (1965).

[d] 304 N. E. 2d at 201, fn. 3.

[15] The court stated in this footnote: "Questions of foreseeability aside, the

In *George* v. *Jordan Marsh Co.* 359 Mass. 244 (1971), this court held that recovery may be had from one who "by extreme and outrageous conduct intentionally causes severe emotional distress to another, with bodily harm resulting from such distress." 359 Mass. at 255 (1971). We expressly declined to rule "on the legal sufficiency of allegations of negligent, grossly negligent, wanton or reckless conduct causing severe emotional distress resulting in bodily injury, or on the legal sufficiency of allegations of distress without resulting bodily injury," stating that the " 'question may be left until it arises.' " *Ibid.* The plaintiffs request that we answer the question here. We again decline to do so.

The only evidence appearing in the record of mental anguish suffered by Robert McDonough is (1) that in June, 1967, when the plaintiffs discovered that sewage was flowing on their property, "[i]t bothered McDonough and gave him gagging sensation when he smelled obnoxious . . . [sewage]," and (2) that Robert McDonough testified "that as a result of the problem with the septic system, he got a little nervous and uptight and that he saw a Dr. David Landeau in Boston on four or five occasions over a three or four month period commencing in June 1968 after he had sold the house back to Fred's Realty Company, Inc." It does not appear that the doctor mentioned testified at the trial. It likewise does not appear that Robert McDonough suffered any direct physical harm as a result of being "nervous and uptight."

We do not believe this case presents an appropriate occasion to take up the question we left unanswered in *George* v. *Jordan Marsh Co.*, *supra*, and to review and reconsider the *Spade* doctrine. Even if a person were held liable for negligent conduct causing mental anguish or

---

plaintiff's emotional distress would not qualify as a personal injury justifying the imposition of tort liability, if for no other reason than that it would be noncompensable in the absence of physical injury even if liability could be otherwise established. *Spade* v. *Lynn & Boston R.R.* 168 Mass. 285, 290 (1897). *Sullivan* v. *H. P. Hood & Sons, Inc.* 341 Mass. 216, 221-223 (1960). This is not a case of intentional or reckless conduct which is extreme and outrageous. *George* v. *Jordan Marsh Co.*" 359 Mass. 244, 255 (1971).

emotional distress to another without accompanying physical injuries, the evidence in the record before us of the mental anguish allegedly suffered by Robert McDonough would be insufficient as a matter of law to allow him to recover.[16] We therefore hold that both defendants' motions for directed verdicts should have been allowed as to the plaintiff Robert McDonough's counts against them alleging "great anguish of mind and embarrassment."

5. DesVergnes also excepts to the allowance of the plaintiffs' motion to amend their declaration to include the count for mental anguish allegedly suffered by Robert McDonough. In view of our holding with respect to the merits of this count, it is unnecessary to consider Des Vergnes's exception.

Whalen's exception to the denial of his motion for a directed verdict is overruled as to count 1 of the plaintiffs' amended declaration against him, and is sustained as to counts 2, 3, and 4 thereof. DesVergnes's exception to the denial of his motion for a directed verdict is overruled as to count 1 of the plaintiffs' amended declaration against him and is sustained as to count 2 thereof. Judgment is to enter in the Superior Court for the plaintiffs in accordance with the verdicts of the jury on count 1 against Whalen and count 1 against DesVergnes; judgment is to enter for the defendants on all other counts against them.

*So ordered.*

---

[16] See *George* v. *Jordan Marsh Co., supra,* at 253-254; Prosser, Torts (4th ed.) § 54, pp. 328-330, 333 (1971): Restatement 2d: Torts, *supra,* § 313, comments a and c (1965); annotation, 64 A. L. R. 2d 100, 115-119 (1959). See also annotation, 28 A. L. R. 2d 1070, 1089-1090, 1093-1095 (1953).