Connors, Thomas A., J.
The plaintiff, the administratrix of the Estate of Helen Jackson, seeks to recover damages resulting from the death of the decedent. Ms. Jackson sustained fatal injury on an escalator at the State Street subway station in Boston on February 24, 2009. The complaint asserts claims for wrongful death and conscious pain and suffering predicated on the negligence of the Massachusetts Bay Transportation Authority (MBTA), its vertical maintenance contractor, KONE, Inc. (KONE), and its vertical transportation consultant, Lerch Bates, Inc. (Lerch Bates). The plaintiff alleges that the three defendant entities failed to ensure that the escalator on which Jackson suffered her fatal injuries was equipped with adequate safely features and was properly maintained.
Lerch Bates has filed a motion for summary judgment on all counts brought against it. The motion was heard on December 17, 2013. For the reasons that follow, the motion is Denied.
Factual Background
Considered in a light most favorable to the plaintiff, the facts and reasonable inferences drawn from them follow. See Mass.R.Civ.P. 56(c). The subject accident occurred on the morning of February 24, 2009, at the State Street subway station. An MBTA patron discovered Jackson lying on her back at the top of MBTA Escalator #374 in a state of apparent distress. According to the testimony of that patron and other bystanders, articles of Jackson’s clothing were caught in the escalator’s machinery and were wrapped tightly around Jackson’s neck as the escalator continued to operate. The patron who discovered Jackson located and depressed an emergency shut-off button at the top of the escalator. Emergency personnel responded to the scene to extricate Jackson by cutting the entrapped articles of her clothing with a knife and scissors, but at that point Jackson was unresponsive. Jackson was later pronounced dead at Massachusetts General Hospital. The Medical Examiner concluded the cause of death to have been asphyxiation.
According to an incident report by the MBTA Transit Police Department, portions of Jackson’s shredded clothing were removed from the comb teeth on the upper end of the escalator following the accident. Underneath the walk-on plate at the top of the esca *113 lator, maintenance personnel recovered a set of keys, human hair, and a hat, all items which belonged to Jackson. Four of the steps containing blood spatter were also removed from the escalator.
The escalator in question, MBTA Escalator #374, was manufactured by Montgomery Elevator Company and had been installed at the State Street subway station in 1971. At the time of the accident, KONE maintained Escalator #374 under a vertical transportation contract with the MBTA.[1] KONE last performed maintenance on Escalator #374 on January 30, 2009, twenty-four days before the subject accident, observing at that time that the escalator was in working order.
In October 2005, the MBTA entered into a preventive maintenance management agreement (the Agreement) with consulting firm, Lerch Bates. In a letter dated October 11, 2005, Lerch Bates had sent the MBTA a proposal which encompassed in toto the Agreement which each of the parties signed. In that document, Lerch Bates represented itself as “the largest consulting firm in the New England region and the United States, dedicated solely to the design, modernization and continuing preventive maintenance of vertical transportation equipment.” Lerch Bates’s Exhibit No. 2. Under the terms of the Agreement, Lerch Bates undertook responsibility for overseeing the MBTA’s maintenance contract with KONE. Specifically, the Agreement required Lerch Bates to develop monthly management reports, detailing the date and time of any equipment shutdown, including the “1ype of shutdown i.e, repair, maintenance, entrapment, accident, etc.” The Agreement further obligated Lerch Bates to “conduct random regular equipment reviews at various stations/facilities,” to evaluate “unit performance,” and to ensure proper “(e]quipment adjustment and lubrication.”
The plaintiff alleges that Jackson was strangled to death after her clothing was caught and pulled downward into the escalator’s machinery, causing the articles of clothing to bind tightly around her neck, to the point that she suffered the fatal asphyxiation. As to her claims against Lerch Bates, the plaintiff contends that Lerch Bates negligently failed to fulfill its preventive maintenance oversight obligations under the Agreement with the MBTA. She further asserts that Lerch Bates had advance notice of the risk of death from combplate entrapment, that it was cognizant of the higher risk of entrapment posed by worn components on older escalators, and that it was aware of the availability and feasibility of retrofit combplate safely devices, which are capable of halting an escalator during an entrapment episode. Notwithstanding its awareness of both the hazard and the feasibility of retrofit safety devices, the plaintiff further argues, Lerch Bates was negligent in its preventive maintenance management activities, evidenced by both the condition of Escalator #374 at the time of the incident, and by Lerch Bates’s failure appropriately to have advised the MBTA on the feasibility of combplate safety devices.
Lerch Bates moves for summary judgment on the basis that its consulting services agreement with the MBTA did not give rise to any duty to the decedent. Lerch Bates argues that Jackson’s death is in no way attributable to any negligence on its part, and that it is, therefore, entitled to judgment as a matter of law.
The Summary Judgment Standard
Summary judgment is appropriate if “viewing the evidence in the light most favorable to the nonmoving parly, all material facts have been established and the moving party is entitled to judgment as a matter of law.” Augat, Inc v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991), citing Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue by submitting affirmative evidence that negates an essential element of the non-moving party’s case, or by showing that the non-moving party has no reasonable expectation of proving an essential element at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). In ruling on a summary judgment motion, the court may consider pleadings, depositions, answers to interrogatories, admissions, and affidavits. See Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976).
Ruling
Lerch Bates argues that, as a preventive maintenance consultant for the MBTA, it owed the decedent no duty of care, and for that reason cannot be held liable for negligence. While Lerch Bates may have had no common-law duly to the decedent, “one who assumes a duty under contract is liable to third persons not parties to the contract who are forseeably exposed to danger and injured as a result of its negligent failure to carry out that obligation.” Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 367-68 (1997). Liability will be imposed, however, only if it is foreseeable that the defendant’s work, if negligently performed, may cause harm to third parties. See McDonough v. Whalen, 365 Mass. 506, 512 (1974).
In its consulting proposal, Lerch Bates represented that using its preventive maintenance management services would help accomplish the MBTA’s mission of providing safe and reliable vertical transportation for MBTA riders. The Agreement outlines preventive maintenance services purposed to ensure the safe and reliable functioning of the MBTA’s vertical transportation equipment. It would be carried out through what Lerch Bates characterized as a “team approach” with the MBTA and KONE. Ajury could, therefore, find that Lerch Bates had obligated itself to work closely with KONE to conduct preventive maintenance, and that failure on its part to do so would be to the detriment of a third party using the MTBA’s vertical transportation equipment. See Banaghan v. Dewey, 340 Mass. *114 73, 80 (1959) (elevator maintenance contractor deemed liable to third persons forseeably exposed to danger and injured as a result of the contractor’s negligent failure to cany out maintenance obligations); see also Rogers v. Dorchester Assocs., 300 N.E.2d 403, 405-06 (N.Y. 1973) (“company which agrees to maintain an elevator in safe operating condition may be liable to a passenger for its failure to correct conditions of which it had knowledge or its failure to have used reasonable care to discover and correct a condition which it ought to have found”).
Lerch Bates argues that, insofar as it may have owed any duly to the decedent passenger, it was under no duty to ensure the safety of the MBTA’s escalators, and it was not required to recommend that the MBTA purchase and install particular safety upgrades. Specifically, Lerch Bates maintains that it was under no obligation to recommend that the MBTA install either of the two combplate safety devices cited by the plaintiffs expert. Furthermore, it claims that neither proposed safety device would have prevented Jackson’s death.[2]
The court agrees that Lerch Bates’s contractual undertaking neither encompassed a duty to recommend the installation of particular safety devices, nor made Lerch Bates an insurer of passenger safety against every potential hazard. Nevertheless, the record indicates that Lerch Bates was on notice of prior incidents of entrapment on MBTA escalators, two of which had resulted in fatalities.[3] The Agreement specifically required Lerch Bates to assist the MBTA in the investigation of accidents and in the implementation of its capital improvement plan as it related to its vertical transportation equipment. Under its Agreement with the MBTA, Lerch Bates obligated itself to “[pjarticipate in a monthly conference with MBTA Engineers and [KONE’s] [Representative” to discuss particular designated issues relating to the performance of the MBTA vertical transportation system. Section I.B. of the Agreement. That provision goes on expressly to set forth the following as among Lerch Bates’s contractual duties:
(b) Equipment review and performance report.
(c) Review proposed schedule for repairs requiring
equipment shutdown.
(d) Areas requiring concentrated attention/focus.
(e) Other items pertinent to proper elevator/escalator service.

Id.

An issue of fact remains as to whether, having been on notice of other entrapment fatalities, and having assumed contractual responsibility for preventive maintenance oversight on MBTA escalators, Lerch Bates was negligent in failing to address, in some manner, the ostensible hazard of escalator combplate entrapment.[4] Moreover, though the Agreement includes a provision which disclaims “liability on account of accidents to persons or damage to property, except if caused by the direct negligence or omissions of [Lerch Bates], its employees or agents,” the court is not convinced that this exculpatory language shields Lerch Bates from liability where, as here, the plaintiff alleges injury stemming from negligent omissions in the carrying out of its preventive maintenance responsibilities. Compare Parent v. Stone & Webster Eng’r Corp., 408 Mass. 108, 113-14 (1990) (defendant engineering and construction manager failed to demonstrate that its contractual relationship with power plant owner had not given rise to a duty of reasonable care to plant employee plaintiff who was foreseeably exposed to danger as a result of defendant’s negligent failure to carry out its contractual duties, sufficient to warrant grant of defendant’s motion for summary judgment); see also Craig v. Everett M. Brooks Co., 351 Mass. 497, 501 (1967).
Finally, Lerch Bates’s efforts to paint itself as at a distinct remove from the on-the-ground maintenance and inspection of MBTA escalators is unpersuasive in view of its express contractual obligations to conduct equipment reviews, and to “evaluate individual unit performance,” including equipment adjustment and lubrication. John Stabler, a vertical transportation consultant retained by the plaintiff, submitted an affidavit asserting that Escalator #374 had not been properly maintained at the time of the accident. Stabler opines that stress cracks and striation marks present on the surface of the four escalator steps removed immediately following the accident indicate that the escalator stairs were not tracking properly. He further asserts that worn and broken step treads and excessive dirt and grease on the surface of the four removed steps suggest that the escalator had not been properly maintained and that it presented both slip and entrapment hazards at the time of the accident. As well as raising issues as to whether Escalator #374 had been adequately maintained at the time of the accident, Stabler’s affidavit also casts doubt upon whether Lerch Bates was exercising due care in carrying out the maintenance and safety oversight obligations it had contractually undertaken. Summary judgment is, therefore, inappropriate, because issues of fact exist as to whether Lerch Bates was negligent in the performance of those maintenance oversight responsibilities which could have contributed to Jackson’s death.
Order
The defendant Lerch Bates, Inc.’s motion for summary judgment is Denied.

The terms of the MBTA’s maintenance agreement with KONE are described in the Memorandum and Order denying KONE’s motion for summary judgment. See Trotman v. Massachusetts Bay Transportation Authority, Memorandum and Order on KONE, Inc.’s Motion for Summary Judgment, SUCV2000-4649A, slip.op. (Mass.Super. February 19, 2014) (Connors, J.).

The plaintiff proffers two types of commercially available combplate safety devices capable of halting an escalator in the event of an entrapment: (1) a combplate stop switch, designed to stop an escalator when vertical movement of the combplate is detected, and (2) a comp-step impact device designed to stop an escalator when either vertical or horizontal combplate movement is detected. The plaintiffs vertical transportation expert, Joseph Stabler, opines that either device would likely have detected the entrapment of Jackson’s clothing and initiated an escalator shutdown.

The record documents a 2005 entrapment fatality on an escalator at the Porter Square subway station, and a 2006 entrapment death at the Forest Hills subway station.

KONE and Lerch Bates similarly argue that the plaintiff cannot establish a casual connection between any alleged breach in a duty to recommend safety upgrades and injury to the decedent because the decision to implement safety features is a matter of MBTA discretion. That neither entity could compel installation of a safety device does not necessarily defeat the plaintiffs claim because a genuine issue of fact remains as to whether the MBTA would have taken action had Lerch Bates or KONE informed it of the need for retrofit safety devices or monitoring to halt an escalator in the event of an entrapment. See LeBlanc v. Logan Hilton Joint Venture, 463 Mass. 316, 328 (2012) (concluding that summary judgment for architect team was inappropriate because, although architect had no power to compel compliance with specifications, an issue of fact remained as to whether reporting construction deficiencies to property owner would have caused contractor to install appropriate safety features).